22044

The STATE, Respondent, v. William T. WILLIAMS,
Appellant.

(312 S. E. (2d) 555)

Supreme Court

*Asst. Appellate Defender Tara D. Shurling, of S. C. Commission of Appellate Defense* and *D. Ashley Pennington,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Carlisle Roberts, Jr.,* and *Sol. James C. Anders,* Columbia, *for respondent.*

Feb. 16, 1984.

LITTLEJOHN, Justice:

The Defendant-Appellant, William T. Williams, was convicted by a jury of the offense of assaulting a police officer in violation of Section 16-9-320 of the Code of Laws for 1976. To be guilty of this offense, the police officer

must have been attempting to make a valid arrest. He has appealed the conviction alleging basically two errors:

(1) Did the court err in determining as a matter of law that the lobby of the Austin Wilkes Society Home in Columbia was a public place as contemplated by the statute making disorderly conduct an offense if committed in a public place.

(2) Did the court err in denying Appellant's motion to quash the indictment, where a solicitor was the sole witness before the grand jury which indicted him.

Police officers were called to the Austin Wilkes Society Home as a result of a complaint relative to the unruly actions of the Appellant. As a result of conduct of the Appellant in the presence of the police officers, they told him that he was under arrest for disorderly conduct. Thereupon he pounced upon one of the police officers throwing him to the floor and choking him before being subdued by another officer.

There can be no doubt but that the Appellant did assault an officer and there is no serious question that he was guilty of disorderly conduct. The sole contention of the Appellant is that the underlying arrest was illegal because his disorderly conduct was not in a public place as contemplated by the statute. It is argued that the judge should have allowed the jury to determine whether the lobby of the Society was a public place.

Much has been written about the definition of "public place." We find the definition included in Black's Law Dictionary, fourth edition, a proper and satisfactory one. We quote:

"A place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public. *People v. Whitman*, 178 App. Div. 193, 165 N.Y.S. 148, 149. *Roach v. Eugene*, 23 Or. 376, 31 P. 825. Any place so situated that what passes there can be seen by any considerable number of persons, if they happen to look. Steph. Cr. L. 115. Also, a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community. A place

exposed to the public, and where the public gather together or pass to and fro. *Lewis v. Commonwealth*, 197 Ky. 449, 247 S. W. 749, 750."

Rooms at the Austin Wilkes Society Home are rented to persons referred to in the record as tenants. The Appellant had paid in advance and the disturbance created related to his seeking a refund. He was free to leave as any guest in a hotel might depart. At the Home, there were some eight or nine tenants other than the Appellant. The area in which the assault took place was described as ". . . . a large waiting area or game room or something like a big living room with a TV, etc."

Beyond debate, the lobby of a hotel where rooms are rented to guests is a public place. The State argues that in similar fashion the lobby of the Austin Wilkes Society Home is a public place as a matter of law. It is common knowledge that Austin Wilkes Society Homes are not private residences. They are often assisted financially by United Way or other charitable contributions and periodically receive governmental grants. Argument on the first question is without merit.

The issue raised by the second question is controlled by our ruling in *State v. Capps*, 276 S. C. 59, 275 S. E. (2d) 872 (1981). We decide this issue also adversely to the Appellant.

Affirmed.

NESS, GREGORY and HARWELL, JJ., concur.

LEWIS, Chief Justice, dissenting:

I adhere to my views expressed in *State v. Capps*. It is apparent that the majority view in *Capps* is now being used as a license to circumvent and eliminate a meaningful participation by the Grand Jury in the judicial process. The cavalier treatment of this issue by the majority should be disturbing.

I dissent and would reverse the judgment.