631 S.E.2d 899

**Brett BURSEY and Mining Association of South Carolina, Respondents,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Defendant,**

and

**South Carolina Electric and Gas Company, Petitioner.**

No. 26166.

Supreme Court of South Carolina.

Heard April 4, 2006.

Decided June 19, 2006.

178

Elizabeth B. Partlow, of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Thomas Grant Eppink, of SCANA Corporation, both of Columbia, for petitioner.

Gregory Jacobs English, of Wyche, Burgess, Freeman & Parham, P.A., of Greenville, for respondent, Mining Association of South Carolina.

Brett Bursey, of Lexington, pro se respondent.

Etta R. Williams, of Columbia, for defendant.

Justice MOORE.

We granted a writ of certiorari to review the Court of Appeals' decision in *Bursey v. South Carolina Dep't of Health and Envtl. Control,* 360 S.C. 135, 600 S.E.2d 80 (Ct.App. 2004). We affirm.

## PROCEDURAL FACTS

As part of the dam remediation project on Lake Murray, petitioner (SCE & G) planned a back-up dam to be constructed by using materials that could be excavated on-site. During this planning process, SCE & G contacted the Department of Health and Environmental Control (DHEC) to inquire into whether it would be necessary to obtain a mine operating permit. DHEC responded by informing SCE & G that no permit would be needed, as the material SCE & G planned on excavating would be used on-site rather than being sold or transported to another location and, thus, did not fall within the definition of "mining." In response to DHEC's determination, nearby resident, Brett Bursey, and the Mining Association of South Carolina (Association) individually filed appeals with the Mining Council (Council).[1] The Mining Council then agreed to conduct a hearing to review DHEC's decision not to require a mine operating permit. Following the hearing, the Mining Council found SCE & G was required to obtain a permit for the proposed actions. The circuit court and Court of Appeals affirmed. *See Bursey, supra.*

---

1. The Mining Council is established in the office of the Governor and acts as an advisory body to the Governor in considering issues relating to mining. In addition, the eleven-member Council adjudicates disputes arising from permitting determinations made by DHEC. S.C.Code Ann. §§ 48–21–20 and 48–20–190 (Supp.2005).

## ISSUES

I. Should the decision of the Mining Council be vacated for lack of subject matter jurisdiction?

II. Did the Court of Appeals err by applying an inappropriate standard of review?

III. Did the Court of Appeals err by applying a substantial evidence standard of review to a legal determination by the Mining Council?

IV. Did the Court of Appeals err by finding respondents' appeals to the Mining Council were timely?

## DISCUSSION

### I. Subject matter jurisdiction

■ SCE & G argues the Council did not have subject matter jurisdiction to entertain respondents' appeals because appeals to the Council can be taken only from the approval or denial of an application for an operating permit and cannot be taken from a decision not to require a permit. SCE & G claims that such an appeal should be taken directly to the Administrative Law Court (ALC).

The South Carolina Mining Act, in S.C.Code Ann. § 48–20–30 (Supp .2005), states that DHEC is responsible for administering the provisions and requirements of the Mining Act, which includes the process and issuance of mining permits. Section 48–20–30 further states that DHEC "has ultimate authority, *subject to the appeal provisions of this chapter* regulating and controlling such activity." (Emphasis added).

South Carolina Code Ann. § 48–20–60 (Supp.2005), provides that an appeal from a DHEC decision regarding an operating permit may be taken to the Council "as provided by Section 48–20–190." Section 48–20–190 provides, in pertinent part:

An applicant for a certificate of exploration or operating permit or a person who is aggrieved and is directly affected by the permit may appeal to the council *from a decision or determination of the department issuing, refusing, modifying, suspending, revoking, or terminating a certificate of exploration or operating permit* or reclamation plan, or

imposing a term or condition on the certificate, permit, or reclamation plan.

(Emphasis added). This section further requires the Council to issue a written decision setting forth its findings of fact and conclusions, and authorizes the Council to direct DHEC to take any action necessary to effectuate the Council's decision.

Section 48–20–60 states that an appeal from a DHEC decision regarding an operating permit may be taken to the Council as provided by § 48–20–190. This section indicates that any appeal involving a decision goes to the Council, including a decision not to require a permit.

A technical reading of § 48–20–190, however, indicates that respondents' appeals should not go to the Council. DHEC's decision did not issue a permit or refuse to issue a permit. Instead, DHEC's decision was a decision that SCE & G's project did not require a permit. We conclude, however, that such a technical reading is strained and is not a practical interpretation of § 48–20–190 that is consonant with the purpose and policy of the appeal provisions of the Mining Act. *See TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 503 S.E.2d 471 (1998) (statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers).

Further, we find the legislature's intent would not be effectuated by requiring that an appeal from a DHEC decision not to require a permit be taken to the ALC, as opposed to the Council, which the legislature has deemed the appropriate specialized entity for addressing appeals regarding DHEC's interpretation of the Mining Act. *See Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998) (cardinal rule of statutory construction is to ascertain and effectuate legislative intent whenever possible).

Accordingly, the Mining Council had subject matter jurisdiction to hear respondents' appeals.

## II. Appropriate standard of review

■ In reviewing the Council's decision that DHEC should have required SCE & G to obtain a permit, the circuit court applied the substantial evidence standard located in the Administrative Procedures Act (APA), which states that a re-

viewing court may reverse or modify a decision of an agency if the findings, inferences, conclusions, or decisions of that agency are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6)(e) (2005). The Court of Appeals affirmed the circuit court, finding the APA required reviewing courts to apply the substantial evidence standard applicable to appeals from decisions of an administrative agency.

SCE & G argues the APA is not applicable to the instant appeal and that the standard of review located in Title 18, Chapter 7, of the South Carolina Code should have been applied by the lower courts. In support, SCE & G cites S.C.Code Ann. § 48–20–200 (Supp.2005), which states:

> An appeal to the courts may be taken from any decision of the council, or its designated committee or the hearing panel, in the manner provided by Chapter 7 of Title 18 [S.C.Code Ann. §§ 18–7–10 to –300 (1985 & Supp.2005)].

SCE & G claims this reference means appeals from the Council must be reviewed using the *de novo* standard of review set forth in S.C.Code Ann. § 18–7–170 (1985).[2]

■ The APA purports to provide uniform procedures before State Boards and Commissions and for judicial review after the exhaustion of administrative remedies. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). We have previously used the APA standard of review when reviewing the appeal of a Mining Council decision. In *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 467 S.E.2d '913 (1996), the South Carolina Land Resources Conservation Commission (LRCC)[3] granted a corporation a permit to mine kaolin. The Council upheld LRCC's decision, and the circuit court upheld both determinations. In affirming the Council's determination, we specifically identified and applied the substantial evidence standard of review contained in the APA.

---

2. Section 18–7–170 states: "... In giving judgment the court may affirm or reverse the judgment of the court below, in whole or in part, as to any or all of the parties and for errors of law and fact."

3. Previously, permits were granted or denied by LRCC. Due to government restructuring, the Mining Act is now administered by DHEC.

Further, in the analogous case of *Lark v. Bi–Lo, Inc.,* *supra,* we ruled the Workers' Compensation Commission (Commission) was an agency for purposes of the APA and that the standard of review located in the APA, rather than the standard of review previously applied by the courts in workers' compensation cases, applied to appeals from the Commission. The Commission and the Mining Council are similar entities. The Commission has seven members who are appointed by the Governor and hears and determines all contested cases involving workers' compensation. *See* S.C.Code Ann. § 42–3–20 (1985). The Council has eleven members, nine of which are appointed by the Governor. The Council hears contested cases involving mining permit decisions made by DHEC. *See* S.C.Code Ann. §§ 48–21–20 and 48–20–190 (Supp. 2005). In *Lark,* we held the Commission was an agency for purposes of the APA because it has rule making authority and hears and decides contested matters. The APA defines "agency" as "each state board, commission, department or officer ... authorized by law to make rules or to determine contested cases." S.C.Code Ann. § 1–23–310(1) (2005). The Council, like the Commission, falls within this agency definition because it determines contested cases.

We find the courts on appeal should defer to the findings of the Council in these matters given the Council has special expertise on mining that the appellate courts do not possess. Based on the authority of *Waters* and *Lark,* we find the APA standard of review applies to appeals from Mining Council decisions. *Cf.* S.C. Reg. 89–290(H) (Supp.2005) (all Council hearings shall be conducted in accordance with the APA).

### III. Application of appropriate standard of review

■ SCE & G argues the Court of Appeals erroneously applied the substantial evidence standard to a legal determination, that is whether the project fell within an exception to the permitting requirements, rather than examining this determination for an error of law. *See* S.C.Code Ann. § 1–23–380(A)(6)(d) (2005) (court may reverse or modify decision if substantial rights of appellant have been prejudiced because administrative findings, inferences, conclusions or decisions are affected by other error of law).

The Mining Act, which requires a permit for all mining activities, defines "mining" as:

(a) the breaking of the surface soil to facilitate or accomplish the extraction or removal of ores or mineral solids for sale or processing or consumption in the regular operation of a business;

(b) removal of overburden lying above natural deposits of ore or mineral solids and removal of the mineral deposits exposed, or by removal of ores or mineral solids from deposits lying exposed in their natural state.

... *Mining does not include excavation or grading when conducted solely in aid of on-site farming or of on-site construction.* ...

S.C.Code Ann. § 48–20–40(1) (Supp.2005) (emphasis added).

SCE & G's activities on the project included blasting, dewatering, crushing, and stockpiling rock, as well as converting the rock into concrete. All activities were to be performed on SCE & G's property.

In reviewing DHEC's determination that SCE & G's activities did not require a permit, the Council concluded SCE & G's activities constituted mining, did not fit within the on-site construction exception, and that a permit was required. Both the circuit court and the Court of Appeals affirmed, finding substantial evidence existed in the record to support the Council's decision that SCE & G's project required a permit.

SCE & G argues the lower courts erred by applying the substantial evidence standard of review to the determination of whether the project went beyond the scope of the exception for on-site construction. They argue deference is not required to the Council's decision because an interpretation of the requirements of the Mining Act, such as the definition of "excavation," is solely a matter of law.

The question of whether SCE & G's activities on the project meet the exception to the permitting requirements carved out by the statute is a mixed question of fact and law. There is a question of law in determining the meaning of the term "excavation" in the exception. *See Charleston County Parks & Rec. Comm'n v. Somers,* 319 S.C. 65, 459 S.E.2d 841 (1995) (determination of legislative intent is a matter of law); *Thompson v. Ford Motor Co.,* 200 S.C. 393, 21 S.E.2d 34

(1942) (the interpretation of the meaning of a statutory term is not a finding of fact). There is also a question of fact in determining whether SCE & G's activities in association with the project exceed the scope of the definition of "excavation" in the exception.

Both the circuit court and the Court of Appeals addressed the definition of excavation, while the Council did not. The Council simply found that SCE & G's activities involved more than excavation. The circuit court found that excavating encompasses: (1) forming a cavity or hole in; (2) forming by hollowing out; (3) digging out and removing; and (4) exposing to view by or as if by digging away a covering. The Court of Appeals stated that, while "excavation" was not defined in the statute, the parties had submitted that the literal definition is akin to that of "digging." Using the APA's "affected by an error of law" standard of review, we find the lower courts did not err in their definition of "excavation."

■ On the issue of whether SCE & G's activity is excavation, the appropriate standard of review, as used by the lower courts, is the substantial evidence standard of review.

The Council found SCE & G's proposed activities of blasting to create an approximately 60–acre quarry pit, dewatering the quarry pit, producing aggregate from the quarry pit, processing aggregate from the quarry pit using primary and secondary and possibly tertiary crushers and conveyors, stockpiling the crushed aggregate, and further processing the aggregate to create concrete to construct a dam necessitated that SCE & G be required to obtain a mining permit. The Council found these activities involved more than "excavation and grading" as contemplated by the exception to the permitting requirements. Both the circuit court and the Court of Appeals found there was substantial evidence to support the Council's finding that SCE & G's project went beyond excavation solely in aid of on-site construction and amounts to mining subject to regulation under the Mining Act.

At the hearing before the Council, Craig Kennedy, the assistant director in the Mining and Solid Waste Management Division of DHEC, testified. He stated the type of projects normally covered by the exception for excavation for on-site construction are for projects where a developer is bringing a site down to a certain grade to allow for construction of a

structure, *e.g.* building a Wal–Mart parking lot, and where a person borrows material from one part of their property to be used on another part of their property. He stated the exception had been used in two cases similar to the instant case and that he interprets the statutory exception to apply anytime the project is solely in aid of on-site construction. Kennedy testified that, without a mining permit, SCE & G will not be required to have a reclamation plan for the land once the project is complete.

James Daniel, the vice-president of Vulcan Materials Company, testified SCE & G's activities exceed excavating and grading because the project is being operated like a quarry by engaging in blasting, dewatering, crushing rock, and processing the rock into concrete.

A portion of the Technical Specifications of SCE & G's project was introduced at the hearing. The document covered the aggregate production of turning the rock into concrete. The specifications mention the excavation of overburden, blasting, aggregate crushing and handling, dewatering, and creation of concrete that will occur on SCE & G's property. The specifications reference the large amounts of equipment that will be involved in the project, such as trucks, conveyors, bins, silos, bulldozers, crushers, a water storage tank, and a plant for mixing the concrete.

From a review of the record, the Council's decision finding SCE & G's activities constituted mining and did not fall within the statutory exception to the requirement of a mining permit is not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Accordingly, the Court of Appeals did not err by finding there was substantial evidence to support the Council's decision. *Cf. Dunton v. S.C. Bd. of Exam'rs in Optometry,* 291 S.C. 221, 353 S.E.2d 132 (1987) (construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons).

### IV. Timeliness of appeals

■ SCE & G argues respondents, Bursey and the Mining Association (Association), failed to file their appeals to the Council in a timely manner.

Pursuant to the Mining Act,

... The person taking the appeal within thirty days after the department's decision shall give written notice to the council through its secretary that he desires to appeal and filing a copy of the notice with the department at the same time.

S.C.Code Ann. § 48–20–190 (Supp.2005). While this language seems to require that a notice of appeal be filed within thirty days of the actual decision, the Act's regulations state that the time for giving a notice of appeal does not actually begin to run until the date of notice of the DHEC decision. *See* 26 S.C.Code Ann. Reg. 89–290(B) (Supp.2005) ("The person taking the appeal shall within thirty days *after notification of the Department's decision*, give written notice to the Mining Council through its secretary that he desires to take an appeal, at the same time filing a copy of the notice with the Department.") (emphasis added).

DHEC notified SCE & G of its decision that no permit was required by letter dated June 5, 2001. On appeal to the Council, SCE & G argued Bursey and the Association's appeals, filed October 17 and October 19, respectively, were untimely because they were filed outside of the thirty-day time period for filing appeals to the Council. Craig Kennedy, of DHEC, testified at the Council hearing that he informed Bursey of DHEC's decision in a telephone conversation before August 31, 2001. Kennedy also testified that he informed the director of the Association of the decision on September 10, and provided a copy of DHEC's written determination to an Association member on September 27, 2001. Kennedy admitted that September 27 was the first time anyone with the Association was provided with a written explanation of the factual and legal basis of DHEC's determination.

Kennedy testified that, as of September 24, the decision not to require a permit was "pretty final," but that he could have been overruled by his supervisor at DHEC. He stated, however, that whether to require the permit was his decision to make.

The director of the Association testified he was not aware of the DHEC decision not to require a permit until he received a copy of the written determination on September 27, 2001.

Bursey testified he became aware of DHEC's decision not to require a permit at some point in June 2001. He testified he submitted a Freedom of Information request to DHEC on June 29 requesting any written documentation relating to the decision, but did not receive a response from DHEC until September 26, 2001. Bursey testified that when he did receive a response from DHEC, a written explanation for their decision was not included. Bursey explained he did not receive what he felt to be a credible answer regarding the permitting decision until October 15, 2001, when he was informed by the project manager for SCE & G that no permit would be required because the proposed actions were not "mining." Prior to that time, Bursey had concluded that DHEC *staff* had determined SCE & G did not need a permit. At the time he spoke with Kennedy, Bursey testified he was unable to determine if a decision was final.

The Council concluded that DHEC's final decision was not communicated to Bursey or the Association before September 27, 2001, when DHEC provided an Association member with a written copy of the decision. Finding Bursey and the Association did not have notice of DHEC's decision before September 27, 2001, the Council ruled their appeals of October 17 and October 19 were timely filed within the thirty-day period. The circuit court and Court of Appeals affirmed, finding there was substantial evidence to support the Council's finding that the appeals were timely filed.

SCE & G argues the evidence in the record establishes that both Bursey and the Association knew of DHEC's final determination long before September 27.

 The possibility of drawing two inconsistent conclusions from the evidence does not prevent an Administrative Agency's finding from being supported by substantial evidence. *Grant v. S.C. Coastal Council,* 319 S.C. 348, 461 S.E.2d 388 (1995). Rather, the appellate court need only find, considering the record as a whole, evidence that would allow reasonable minds to reach the conclusion that the administrative agency reached. *Id.*

We find there is substantial evidence in the record to support the Council's decision that respondents' appeals were timely filed. While Bursey testified he became aware of

DHEC's decision not to require a permit in June 2001, he stated he did not believe this was a final decision made by DHEC, but was a staff decision that could be altered. Kennedy's testimony that, as of September 24, the decision not to require a permit was "pretty final," but was a decision that could have been overruled by his supervisor, supports Bursey's analysis of the situation. As for the Association, while there was conflicting evidence as to what occurred in a telephone conversation between the Association's director and Kennedy on September 10, Kennedy admitted that September 27 was the first time anyone with the Association was provided with a written explanation of DHEC's determination. Further, the director of the Association testified he was unaware of the DHEC decision until he received a copy of the written determination on September 27, 2001. Considering the record as a whole, there is evidence that allows reasonable minds to reach the conclusion that the Council reached. *See Grant, supra.*

Accordingly, the Court of Appeals did not err by affirming the Council's decision on the basis there was substantial evidence in the record to support the finding that the appeals were timely filed.

## CONCLUSION

We find the Mining Council had subject matter jurisdiction to hear respondents' appeals and that the APA standard of review applies to appeals from Mining Council decisions. Further, we find there was substantial evidence to support the Council's finding that SCE & G's activities constituted mining and did not fall within the statutory exception to the requirement of a mining permit. Finally, we find there was substantial evidence to support the Council's finding that the appeals were timely filed. Therefore, the decision of the Court of Appeals is

**AFFIRMED.**

TOAL, C.J., and WALLER, J., concur.

PLEICONES, J., dissenting in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES.

I respectfully dissent. In my opinion, the circuit court erred in applying the standard of review found in the Administrative Procedures Act (APA)[4] rather than the de novo standard found in S.C.Code Ann. § 18–7–170 (1985). I would therefore vacate both the Court of Appeals' decision and the circuit court's order and remand for reconsideration of SCE & G's appeal.

It is well-settled that a specific statute controls over a more general one, *e.g., Capco of Summerville, Inc. v. J.H. Gayle Const. Co., Inc.,* 368 S.C. 137, 628 S.E.2d 38 (2006), and that a more recent legislative enactment prevails over an earlier one. *E.g,, Town of Duncan v. S.C. Budget & Control Bd.,* 326 S.C. 6, 482 S.E.2d 768 (1997). Here, S.C.Code Ann. § 48–20–200 (Supp.2005), mandating that appeals from the Mining Council be taken in the manner provided by § 18–7–170, was reenacted after the adoption of the APA, and hence is the more recent statute. Perhaps even more persuasive is the fact that § 48–20–200 is applicable only to Mining Council appeals, and therefore is the more specific statute. Further, the fact that we have applied the APA standard in a previous Mining Council appeal where the parties did not contest the standard of review does not bind us in this case where the matter is properly preserved and presented for our review. *E.g., Hutto v. Southern Farm Bureau Life Ins. Co.,* 259 S.C. 170, 191 S.E.2d 7 (1972) ("It is, of course, settled law that 'a case cannot be considered as a binding precedent on a legal point that was not argued in the case and not mentioned in the opinion"); *cf. Breland v. Love Chevrolet Olds, Inc.,* 339 S.C. 89, 529 S.E.2d 11 (2000) (fact that Court decided prior appeal on merits is not dispositive whether order is directly appealable where appealability was not raised).

The ordinary rules of statutory construction dictate that the de novo standard be applied. I would therefore vacate the circuit court order and the Court of Appeals' decision and remand the matter to the circuit court for a de novo appellate review.

BURNETT, J., concurs.

---

4. S.C.Code Ann. § 1–23–380(A)(6)(e) (2005).