646 S.E.2d 162

**Timothy Mark HOPPER, Employee/ Claimant,**

**v.**

**TERRY HUNT CONSTRUCTION, Employer, Uninsured, South Carolina Uninsured Employers' Fund, Kajima USA, Inc., Statutory Employer, and Zurich American Insurance Company, Carrier, Defendants,**

**of whom Kajima USA, Inc., Statutory Employer, and Zurich American Insurance Company, Carrier are Respondents,**

**and South Carolina Employers' Fund is Appellant.**

**No. 4238.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2007.

Decided April 23, 2007.

Rehearing Denied June 28, 2007.

476

Latonya Dilligard Edwards, of Columbia and Terry M. Mauldin, of Lexington, for Appellant.

Steven M. Rudisill, of Charlotte, for Respondents.

WILLIAMS, J.

The South Carolina Uninsured Employers' Fund (the Fund) appeals the circuit court's reversal of the Appellate Panel of the Workers' Compensation Commission (the Commission). The circuit court found Kajima USA, Inc. (Kajima) and its workers' compensation carrier, Zurich American Insurance Company (Zurich), were entitled to transfer liability to the Fund pursuant to Section 42-1-415 of the South Carolina Code (Supp.2006). The Fund argues the circuit court erred by: (1) concluding Kajima satisfied the requirements of section 42-1-415 to transfer liability; (2) concluding no substantial evidence existed to support the Commission's finding that the certificate of insurance presented to Kajima showed coverage only in Georgia; and (3) relying on our decision in *South Carolina Uninsured Employers' Fund v. House,* 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004). We reverse.

## FACTS

Timothy Hopper suffered an injury while working for Hunt Construction Company (Hunt) in Greenwood, South Carolina. Hopper sought workers' compensation benefits from Hunt and Kajima. In response, Kajima and Zurich sought to transfer liability to the Fund pursuant to section 42-1-415.

At the time of the accident, Hunt was performing work as a subcontractor for the general contractor Kajima. Both companies are based in Georgia, and at the time of the accident, Hunt did not have workers' compensation insurance coverage in South Carolina. However, prior to Hopper's injury, Hunt presented a certificate of workers' compensation insurance to Kajima.

The single commissioner found Kajima was not entitled to transfer liability to the Fund pursuant to section 42-1-415 and ordered Kajima and Zurich to pay benefits to Hopper. The commissioner reached this conclusion by stating Hunt lacked workers' compensation insurance coverage in South Carolina at the time of the accident and the certificate of insurance Hunt provided to Kajima showed coverage in Georgia but no coverage in South Carolina. Kajima and Zurich appealed this decision to the Commission, which affirmed the single commis-

sioner. Thereafter, Zurich and Kajima appealed to the circuit court.

The circuit court ruled no substantial evidence existed to support the Commission's finding that the certificate of insurance showed coverage only in Georgia. The circuit court determined the Commission erred in its application of section 42–1–415 and concluded Kajima and Zurich were entitled to transfer liability to the Fund pursuant to section 42–1–415. The Fund now appeals the circuit court's rulings.

## STANDARD OF REVIEW

 The Administrative Procedures Act applies to appeals from decisions of the Commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). In an appeal from the Commission, neither this Court nor the circuit court may substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but it may reverse when the decision is affected by an error of law. *Corbin v. Kohler Co.,* 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002).

 "Any review of the [C]ommission's factual findings is governed by the substantial evidence standard." *Lockridge v. Santens of Am., Inc.,* 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct.App.2001). "Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached." *Id.* at 515, 544 S.E.2d at 844. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Lee v. Harborside Café,* 350 S.C. 74, 78, 564 S.E.2d 354, 356 (Ct.App.2002) (internal quotations and citations omitted).

 As noted above, an appellate court may reverse the Commission when the Commission's decision is based on an error of law. *Corbin,* 351 S.C. at 617, 571 S.E.2d at 95. Certain situations involve a mixed question of law and fact. Statutory interpretation is a question of law. *House,* 360 S.C. at 470, 602 S.E.2d at 82. But whether the facts of a case were correctly applied to a statute is a question of fact, subject to

the substantial evidence standard. *Bursey v. South Carolina Dep't of Health & Envtl. Control*, 369 S.C. 176, 184–85, 631 S.E.2d 899, 904 (2006) (The meaning of a statutory term is a question of law, but whether a gas and electric company's activities met this definition is a question of fact.).

■ Therefore, the determination of the requirements to transfer liability under section 42–1–415 is a question of law. However, whether Kajima and Zurich met those requirements is a question of fact.

## LAW/ANALYSIS

The Fund initially argues the circuit court erred by concluding Kajima satisfied the requirements of section 42–1–415 to transfer liability to the Fund. In other words, the Fund contends the circuit court erred because substantial evidence existed to support the Commission's conclusion that Kajima did not satisfy the requirements under section 42–1–415. However, before we determine the issue of whether Kajima met the requirements of section 42–1–415, we must ascertain what those requirements are.

### A. Requirements of section 42–1–415

■ Section 42–1–415 in pertinent part provides:

(A) [U]pon the submission of documentation to the commission that a . . . subcontractor has represented himself to a higher tier . . . contractor . . . as having workers' compensation insurance at the time the . . . subcontractor was engaged to perform work, the high tier . . . contractor . . . must be relieved of any and all liability. . . . In the event that [the subcontractor] is uninsured . . . the higher tier . . . contractor . . . shall . . . pay all benefits due. . . . The higher tier . . . contractor . . . may petition the commission to transfer responsibility for continuing compensation and benefits to the Uninsured Employers' Fund. The Uninsured Employers' Fund shall assume responsibility for claims within thirty days of a determination of responsibility made by the commission.

(B) To qualify for reimbursement ... the higher tier ... contractor ... must collect documentation of insurance as provided in subsection (A) on a standard form acceptable to the commission. The documentation must be collected at the time the ... subcontractor is engaged to perform work and must be turned over to the commission at the time a claim is filed by the injured employee.

If the language in the statute is plain and unambiguous, there is no need to resort to the rules of statutory interpretation. *City of Columbia v. Am. Civil Liberties Union of South Carolina, Inc.,* 323 S.C. 384, 387, 475 S.E.2d 747, 749 (1996). If the terms of the statute are clear, the court must apply those terms according to their literal meaning. *Id.* Therefore, we must first determine if the language used in section 42–1–415 is ambiguous.

The dispute between Kajima and the Fund arises in their interpretation of the type of documentation required to transfer responsibility for compensation. Kajima ultimately argues as long as a subcontractor provides a general contractor with proof of workers' compensation insurance in any state, the general contractor is relieved of its duty, irrespective of whether the subcontractor has coverage in South Carolina. The Fund argues there must be coverage in South Carolina for section 42–1–415 to apply.

Section 42–1–415 provides the means for a general contractor to shift liability for workers' compensation benefits. To gain this benefit, the subcontractor has to provide the general contractor with "documentation" that shows the former has workers' compensation insurance. § 42–1–415.

"Documentation" is not a defined term in section 42–1–415. However, Regulation 67–415 of the South Carolina Code (Supp.2006) sets out an acceptable way to demonstrate insurance coverage. This regulation provides:

For purposes of Section 42–1–415, the ACORD Form 25–S, Certificate of Insurance, as published by the ACORD Corporation and as issued by the insurance carrier for the insured, shall serve as documentation of insurance. The Certificate of Insurance must be dated, signed, and issued

by an authorized representative of the insurance carrier for the insured.

On the surface, it would appear Regulation 67–415 sets out the definition of "documentation." However, our recent decision in *Barton v. Higgs,* 372 S.C. 109, 641 S.E.2d 39 (Ct.App. 2007), is illustrative on this point. In that case, we held Regulation 67–415 describes documentation that is always acceptable. *Id.* But the Regulation does not set out the only acceptable means to prove coverage. *Id.*

Because the term is susceptible to at least two different meanings, it is ambiguous. Consequently, we must resort to the rules of statutory construction to ascertain its meaning.

The cardinal rule of statutory construction is to determine and give effect to the intent of the legislature. *Charleston County Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). Following Kajima's interpretation of the statute would lead to a conclusion that the legislature did not intend.

Kajima's argument stands for the proposition that although a subcontractor does not have workers' compensation insurance in South Carolina, if a subcontractor shows a general contractor proof of coverage in another state, a general contractor is relieved of liability. In other words, if Hunt, the subcontractor, had coverage only in Alaska and showed proof of this coverage to Kajima, Kajima would be relieved of liability.

Following this interpretation would allow a general contractor to escape liability by turning a blind eye towards the obvious. Moreover, such an interpretation would place a general contractor's liability upon the shoulders of South Carolina, by deducting from the State treasury money owed by a general contractor. Surely, the legislature did not intend such a result when it enacted section 42–1–415. *See Mauldin v. Dyna–Color/Jack Rabbit,* 308 S.C. 18, 22, 416 S.E.2d 639, 641 (1992) (Workers' compensation statutes are to be liberally construed in favor of coverage.); *see also Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 123, 542 S.E.2d 736, 740 (Ct.App.2001) (Statutes that impose liability on the State must be liberally construed in favor of limiting liability to the State.); *Vulcan Materials Co. v. Greenville County Bd. of*

*Zoning Appeals,* 342 S.C. 480, 496, 536 S.E.2d 892, 900 (Ct.App.2000) ("The construction of a statute by the agency charged with its administration should be accorded great deference and will not be overruled without a compelling reason.").

▮ Nonetheless, Kajima argues the language of section 42–1–415 is unambiguous. However, no matter how "clear the language of a statute may be, the court will reject that meaning when it leads to an absurd result not possibly intended by the legislature." *Hamm v. South Carolina Pub. Serv. Comm'n,* 287 S.C. 180, 182, 336 S.E.2d 470, 471 (1985). Even if we were to assume the language of section 42–1–415 is clear, such a reading would lead to the absurd result described above.[1] Having determined that section 42–1–415 does not reward a general contractor for turning a blind eye to the obvious, we must now determine whether Kajima complied with this section.

### B. Kajima noncompliance with section 42–1–415

The Fund argues the circuit court erred by concluding Kajima satisfied the requirements of section 42–1–415 to transfer liability. In other words, the Fund contends there was substantial evidence that the certificate of insurance presented to Kajima showed coverage only in Georgia and not in South Carolina. We agree.

As described above, whether an agency correctly applied the facts of a case to a statute is a question of fact, subject to the substantial evidence standard. *Bursey,* 369 S.C. at 184–85, 631 S.E.2d at 904. Thus, our review of whether the Commission correctly concluded Kajima met the requirements of section 42–1–415 is subject to the well-known substantial evidence standard.

---

1. Our ruling today does not put an extra duty upon the general contractor to inquire into the validity of the subcontractor's coverage. However, a general contractor cannot expect to turn a blind eye to the subcontractor's obvious lack of coverage in South Carolina and have the State shoulder that burden. A determination of what type of conduct constitutes an obvious lack of coverage in South Carolina will have to be settled on a case-by-case basis.

■ The certificate of insurance provided by Hunt to Kajima, dated September 4, 2003, lists the insured as "Terry Hunt Construction Company ... Valdosta, [Georgia] 31602." The certificate holder is listed as "Kajima Construction Services, Inc.... Atlanta, [Georgia] 30305–1503." The coverage producer is listed as "BB & T Insurance Services, Inc.... Macon, [Georgia] 31210." The block labeled "Description of Operations/Locations" is blank. There is no indication on the certificate of insurance in which state, if any, Hunt had workers' compensation coverage. Based on this, there is substantial evidence to support the Commission's finding that Kajima did not satisfy section 42–1–415. Thus, the circuit court erred by concluding Kajima satisfied the requirements of section 42–1–415 to transfer liability.

## C. The *House* case

The Fund argues the circuit court erred by relying on our decision in *South Carolina Uninsured Employers' Fund v. House*, 360 S.C. 468, 602 S.E.2d 81 (Ct.App.2004). Conversely, Kajima asserts *House* is factually similar to this case; therefore, Kajima should be able to pass liability to the Fund. We agree with the Fund.

In *House*, a general contractor employed a subcontractor for framing work. *Id.* at 469, 602 S.E.2d at 81. During the course of employment, an employee of the subcontractor was injured. *Id.* Prior to the accident, the subcontractor presented to the general contractor a certificate indicating workers' compensation coverage. *Id.* However, by the time of the accident, the subcontractor's coverage had lapsed. *Id.* at 469–70, 602 S.E.2d at 81–82.

The Commission concluded the subcontractor committed fraud by failing to notify the general contractor of the lapse. *Id.* The Commission transferred the general contractor's liability to the Fund pursuant to section 42–1–415. *Id.* The circuit court reversed and concluded the general contractor had notice of the subcontractor's lapse in coverage. *Id.* The general contractor appealed to this Court, and we reversed the circuit court. *Id.* Kajima argues this factual similarity requires us to affirm the circuit court. However, *House* is distinguishable from this case.

The central issue in *House* was whether a general contractor had a continuous duty to collect proof of insurance coverage. *Id.* We noted section 42–1–415 does not "require a [general] contractor to *continue* to collect proof of insurance coverage from its subcontractor after originally collecting documentation at the time of the hire." *Id.* at 471, 602 S.E.2d at 82 (emphasis added).

In *House*, the subcontractor initially provided the general contractor with proper documentation. *Id.* We did not address the issue of what happens if the documentation originally submitted to the general contractor did not provide coverage in South Carolina. *House* does not stand for the proposition that a general contractor may escape liability simply by collecting documentation that shows a lack of workers' compensation coverage in South Carolina. Thus, the circuit court erred in relying on *House.*

## CONCLUSION

Accordingly, the circuit court's decision is

**REVERSED.**[2]

HUFF and BEATTY, JJ., concur.

___

2. We decide this case without oral argument pursuant to Rule 215, SCACR.