718 S.E.2d 227

**Ralph Duane KING, Jr., Appellant,**

v.

**INTERNATIONAL KNIFE AND SAW–FLORENCE, Employer,**

and

**Peerless Insurance Company c/o Montgomery Insurance, Respondents.**

**No. 4895.**

Court of Appeals of South Carolina.

Heard Oct. 3, 2011.
Decided Oct. 19, 2011.
Rehearing Denied Dec. 19, 2011.

438

Stuart Wesley Snow, of Florence, for Appellant.

James H. Lichty, Weston Adams, III, and Helen F. Hiser, all of Columbia, for Respondents.

CURETON, A.J.

After Ralph D. King, Jr., suffered work-related injuries and filed a workers' compensation claim, the single commissioner awarded him benefits. King's employer, International Knife and Saw–Florence, and its insurance carrier, Peerless Insurance Company, (collectively Employer) appealed to the Appellate Panel of the Workers' Compensation Commission (Appellate Panel). The Appellate Panel reversed. King appeals, arguing the Appellate Panel erred in: (1) concluding his repetitive trauma injury was compensable at a time when King had missed no work because of the condition, had sought no treatment for it, and had not been diagnosed as having a repetitive trauma injury; (2) concluding the ninety-day notice

period commenced before King was diagnosed with a repetitive trauma injury; (3) finding substantial evidence indicated King had "first noticed [a repetitive trauma injury] a couple of years ago, ... suspected his job was causing [a repetitive trauma injury] when he first noticed it, and ... discovered his condition was compensable a couple of years ago"; (4) finding substantial evidence that, even if King had not discovered his condition was compensable, he could have done so years earlier through the exercise of reasonable diligence; and (5) failing to address whether King had a reasonable excuse for failing to give timely notice and whether Employer suffered undue prejudice as a result. We reverse on the issue of compensability, reinstate the benefits awarded by the single commissioner, and decline to address King's remaining issues.

## FACTS

From April 1995 to May 2008, King used six-, eight-, and ten-pound hammers to hammer saw blades to customer specifications for his employer. On April 17, 2008, the hammer King was using broke, and King experienced a sharp pain in his shoulder. He continued working for nearly a month before notifying his supervisor of his injury and seeking medical treatment. King stopped working on May 15, 2008.

On August 7, 2008, King filed a claim for workers' compensation benefits due to right shoulder and neck injuries. Employer denied his claim, alleging his injuries were not work-related and he failed to give timely notice of a repetitive trauma injury. King later amended his claim to include carpal tunnel syndrome in his right arm, hand, and fingers. Both the original and the amended claim indicated he sought benefits for "injury" as well as "repetitive trauma."

On November 25, 2008, the parties appeared for a hearing before the single commissioner on the issue of whether King gave Employer proper notice. King testified he stopped working for Employer in May because of pain in his "arm and shoulder and stuff." Although King denied having any problems using his hands or arms prior to that day, he conceded his right arm had hurt and ached for the past couple of years. Furthermore, he suspected the ache in his arm was connected

to his work: "After slinging a hammer all day, . . . your arm's going to be tired."

King's medical records reflected that, from May to September 2008, King sought and received medical treatment for pain on his right side, from his neck to his hand, and numbness in his right hand. He received prescription pain medications, and his doctors explored possible causes in his rotator cuff, cervical spine, nervous system, and carpal tunnel. An MRI excluded King's rotator cuff and spine as sources of the pain; however, one of his treating physicians found a mild nerve impingement in his right shoulder. A steroid injection to King's shoulder relieved some of his shoulder pain.

In addition, electrodiagnostic studies revealed King suffered from moderate carpal tunnel syndrome on his right side. He underwent ETPS[1] and physical therapy. By August, King reported his right hand was still numb. His doctor recommended carpal tunnel release surgery to treat King's hand.

The single commissioner found King's report to Employer was timely and awarded benefits for total disability and medical treatment. Employer appealed, and the Appellate Panel reversed both the finding of timeliness and the award of benefits. Specifically, the Appellate Panel found King "first noticed this injury a couple of years ago," suspected his work caused the injury, "knew well before he gave notice that he had a work-related problem," and "discovered his condition was compensable a couple of years ago." This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the Appellate Panel. S.C.Code Ann. § 1–23–380 (Supp.2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the substantial evidence standard of review, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact. *Stone v. Traylor Bros., Inc.*, 360 S.C.

---

1. The record identifies this procedure only by its initials. It appears to be a form of acupuncture accompanied by an electric current that may be used to treat carpal tunnel syndrome.

271, 274, 600 S.E.2d 551, 552 (Ct.App.2004). However, we may reverse the Appellate Panel's decision when it is unsupported by substantial evidence or controlled by an error of law. *Corbin v. Kohler Co.*, 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct.App.2002).

▇ "Statutory interpretation is a question of law." *Hopper v. Terry Hunt Constr.*, 373 S.C. 475, 479, 646 S.E.2d 162, 165 (Ct.App.2007). This court is free to decide matters of law with no particular deference to the fact finder. *Pressley v. REA Constr. Co.*, 374 S.C. 283, 287–88, 648 S.E.2d 301, 303 (Ct.App.2007). "But whether the facts of a case were correctly applied to a statute is a question of fact, subject to the substantial evidence standard." *Hopper*, 373 S.C. at 479–80, 646 S.E.2d at 165.

## LAW/ANALYSIS

▇ King asserts the Appellate Panel erred in concluding his repetitive trauma injury was compensable at a time when he had missed no work because of the condition, had sought no treatment for it, and had not been diagnosed as having a repetitive trauma injury. We agree.

The South Carolina Workers' Compensation Act (Act) requires employers to compensate employees who sustain injuries "arising out of and in the course of employment." S.C.Code Ann. § 42–1–160(A) (Supp.2010). The compensation to which an injured employee is entitled is "the money allowance payable to an employee or to his dependents as provided for in … Title [42] and includes funeral benefits." S.C.Code Ann. § 42–1–100 (1985). Employers are obligated to provide medical treatment and supplies. S.C.Code Ann. § 42–15–60 (Supp.2010). In addition, employers must pay benefits to injured employees for their total or partial disability, according to a statutory schedule. S.C.Code Ann. §§ 42–9–10 to –30 (1985 & Supp.2010). Our supreme court has observed the workers' compensation system does not compensate an employee for his injury but, instead, "provid[es an] injured employee with sufficient income and medical care to keep him

from destitution." *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 116, 580 S.E.2d 100, 108 (2003).

█ When an employee suffers a repetitive trauma injury: [N]otice must be given by the employee within ninety days of the date the employee discovered, or could have discovered by exercising reasonable diligence, that his condition is compensable, unless reasonable excuse is made to the satisfaction of the [Workers' Compensation C]ommission for not giving timely notice, and the commission is satisfied that the employer has not been unduly prejudiced thereby.

S.C.Code Ann. § 42–15–20(C) (Supp.2010). The statutory notice requirements in this section "should be liberally construed in favor of claimants." *Murphy v. Owens Corning*, 393 S.C. 77, 82, 710 S.E.2d 454, 457 (Ct.App.2011). The Appellate Panel's findings concerning notice are subject to the substantial evidence standard. *Id.* at 82–83, 710 S.E.2d at 457.

We find substantial evidence does not support the Appellate Panel's findings characterizing King's long-term arm ache as an "injury," determining King discovered or could have discovered "a couple of years ago" that he had a compensable condition, and barring King from receiving benefits for failing to satisfy the notice requirement. Therefore, we reverse the Appellate Panel's decision and reinstate the single commissioner's award of benefits.

The question before us is this: in the case of a repetitive trauma injury, what event triggers an injured employee's obligation to report and commences the ninety-day reporting period established in section 42–15–20(C)? By its nature, a repetitive trauma injury lacks a definite time of injury because the damage "is gradual in onset and caused by the cumulative effects of repetitive traumatic events." S.C.Code Ann. § 42–1–172(A) (Supp.2010); *see also Schurlknight v. City of N. Charleston*, 352 S.C. 175, 178, 574 S.E.2d 194, 195 (2002) ("Repetitive trauma injuries ... have a gradual onset caused by the cumulative effect of repetitive traumatic events or 'mini-accidents.' As noted by other courts, it is difficult to determine the date an accident occurs in a repetitive trauma case because there is no definite time of injury."). Employer focuses its arguments on section 42–15–20(C)'s use of the word "condition," contending any occurrence of pain, when coupled

with the employee's belief that the pain is work-related, triggers the employee's reporting obligation under section 42–15–20(C). In short, Employer urges us to equate pain with a compensable condition. We decline to do so. Nothing in the Act suggests our legislature intended to compensate an employee for aches, pains, or other conditions that do not interfere with his ability to do his job, even if those conditions are work-related. *Cf. Wigfall,* 354 S.C. at 116, 580 S.E.2d at 108 (observing workers' compensation laws "are not designed to compensate the employee for his injury, but merely to provide him with the bare minimum of income and medical care to keep him from being a burden to others").

██ An employee's obligation to report a work-related repetitive trauma injury is not triggered by the onset of pain but, rather, by the employee's diligent discovery that his condition is compensable. § 42–15–20(C). We must determine, then, when a repetitive trauma injury becomes compensable. Our supreme court has long recognized that the Act entitles employees injured at work to compensation on only two bases, lost earning capacity and specific, scheduled injuries. *Wigfall,* 354 S.C. at 104, 580 S.E.2d at 102 (citing *Jewell v. R.B. Pond Co.,* 198 S.C. 86, 90–91, 15 S.E.2d 684, 686 (1941)); *see also* §§ 42–1–100, 42–9–10 to –30, & 42–15–60 (establishing and describing compensation for (1) medical care or treatment for a work-related injury and/or (2) disability). Accordingly, a work-related repetitive trauma injury does not become compensable, and the ninety-day reporting clock does not start, until the injured employee discovers or should discover he qualifies to receive benefits for medical care, treatment, or disability due to his condition.

█ Here, the Appellate Panel found King was obligated to give Employer notice of his injury based upon his knowledge of pain "a couple of years" before he either required medical care or was unable to perform his job. In doing so, the Appellate Panel improperly required King to give notice of a condition that he had no reason to believe was compensable. Under section 42–15–20(C) and the sections addressing compensation, King had a duty to notify Employer of his injury within ninety days of the date he discovered or should have discovered it qualified him to receive benefits for medical care,

treatment, or disability. The record reflects King acknowledged to the single commissioner that his arm was tired, sore, and achy for a couple of years before he became unable to work. He further admitted that he believed his arm ached because he worked "slinging a hammer all day." However, a mere work-related ache does not constitute a compensable condition, regardless of whether the employee later develops an injury. The Act requires an injured employee to be diligent, not prescient. King's condition was not compensable until it either required medical care or interfered with his ability to perform his job, whichever occurred first.

The record reflects King first missed work on May 15, 2008, and first saw a doctor for his injuries within two weeks after that date. King testified that, until May 2008, he neither required medical treatment nor experienced any condition that affected his ability to perform his job as he had done for many years. Nonetheless, his medical records reflect he reported to his physician that his pain suddenly became "much worse" in April 2008. Even assuming King should have discovered in April 2008 that his injury required medical treatment, his report of his injury to Employer in May 2008 fell well within the ninety-day notice period.

For the foregoing reasons, the Appellate Panel erred in finding King knew or should have known his injury was compensable "a couple of years" before he became disabled. As a result, the Appellate Panel's denial of benefits was error. Therefore, we reverse the Appellate Panel's decision and reinstate the single commissioner's award of benefits.

■ We decline to address King's remaining issues because reversal on the issue of compensability disposes of this appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We find an injury does not become compensable under the Workers' Compensation Act until the injured employee satisfies the statutory criteria entitling him to compensation. We further find the evidence adduced in this case indicates King

had no reason to discover his injury was compensable before April 2008, and the factual determinations supporting the Appellate Panel's denial of King's claim are unsupported by substantial evidence in the record. Accordingly, we reverse the decision of the Appellate Panel, reinstate the single commissioner's award of benefits, and do not reach King's remaining issues on appeal.

**REVERSED.**

SHORT and WILLIAMS, JJ., concur.