**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

George Holmes, Appellant.

Appellate Case No. 2016-002010

———————————

Appeal From Beaufort County
Michael G. Nettles, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-133
Submitted February 1, 2019 – Filed April 10, 2019
Withdrawn, Substituted, and Refiled August 28, 2019

———————————

**AFFIRMED**

———————————

Appellate Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor Isaac McDuffie Stone, III, of Bluffton, for Respondent.

———————————

**PER CURIAM:**  In this criminal matter, George Holmes appeals the circuit court's denial of his motion for a directed verdict.  Holmes argues the circuit court erred in failing to direct a verdict on the offense of indecent exposure when (1) the alleged exposure occurred in a holding cell at the Beaufort County Detention Center (the Detention Center), which is not a public place as intended under section 16-15-130 of the South Carolina Code (2015) and (2) the circuit court applied the wrong standard of review, and under the correct standard of review, the State failed to present any direct or circumstantial evidence that Holmes willfully or maliciously exposed his person or intended to expose his person.  We affirm.

1. We find there is evidence to support the circuit court's refusal to direct a verdict because whether the Detention Center jail cell is a public place under section 16-15-130(A)(1) is a question of fact that should be resolved by a jury.  *See State v. Zeigler*, 364 S.C. 94, 103, 610 S.E.2d 859, 863 (Ct. App. 2005) ("The appellate court may reverse the [circuit court]'s denial of a motion for a directed verdict only if there is no evidence to support the [circuit court]'s ruling."); *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) ("When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight."); *Hopper v. Terry Hunt Constr*., 373 S.C. 475, 479–80, 646 S.E.2d 162, 165 (Ct. App. 2007) ("Certain situations involve mixed question of law and fact.  Statutory interpretation is a question of law.  But whether the facts of a case were correctly applied to a statute is a question of fact . . . ."); *see, e.g., Bursey v. S.C. Dep't of Health & Envtl. Control*, 369 S.C. 176, 185, 631 S.E.2d 899, 904 (2006), *overruled on other grounds by Allison v. W.L. Gore & Assocs*., 394 S.C. 185, 188, 714 S.E.2d 547, 549 (2011) (finding the meaning of the term 'excavation' in a statute was a question of law and whether certain activities exceeded the scope of the definition of 'excavation' was a question of fact); § 16-15-130(A)(1) ("It is unlawful for a person to wilfully [sic], maliciously, and indecently expose his person in a public place, on property of others, or to the view of any person on a street or highway."); *State v. Williams*, 280 S.C. 305, 306, 312 S.E.2d 555, 556 (1984) (defining "public place" as "[a] place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public . . . [a]ny place so situated that what passes there can be seen by any considerable number of persons, if they happen to look . . . [a]lso, a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community . . . [a] place exposed to the public, and where the public gather together or pass to and fro" (quoting *Public Place, Black's Law Dictionary* (4th ed. rev. 1968)); *see also Collins v. State*, 381 S.E.2d 430, 431 (Ga. Ct. App. 1989)

("Whether the act was performed in a 'public place' within the meaning of the [public indecency] statute was a question of fact which the trial court properly left for the jury's resolution."); *Douglas v. State*, 768 S.E.2d 526, 551 (Ga. Ct. App. 2015) ("Under this general definition, what constitutes a public place is a question of fact for the jury and must be proved or disproved by the evidence in each case . . . ."); *People v. Williams*, 613 N.W.2d 721 (Mich. 2000) ("However, to the extent that the prosecution may have to establish that the act occurred in public as an element of the crime, it remains a question for trial whether the element is established."); *Wisneski v. State*, 905 A.2d 385, 393 (Md. Ct. Spec. App. 2006) ("What constitutes a public place within the meaning of [indecent exposure] depends on the circumstances of the case." (quoting *Messina v. State*, 130 A.2d 578, 579 (Md. 1957)) (emphasis omitted)); *State v. Narcisse*, 833 So.2d 1186, 1192 (La. Ct. App. 2002) (stating the question of whether a jail infirmary is a public place open to the public view is a question for the jury to determine).

Further, we find there is evidence reasonably tending to prove the jail cell is a public place because the cell is visible to those who pass by and happen to look through the cell window or the gap in the door. *See Williams*, 280 S.C. at 306, 312 S.E.2d at 556 (including a "place so situated that what passes there can be seen by any considerable number of persons, if they happen to look" in the definition of a public place (quoting *Public Place*, *Black's Law Dictionary* (4th ed. rev. 1968))). Officer Jessica DeSantis testified she could see into the cell from the booking desk and as she walked past the cell. Witness testimony indicated the booking area is the busiest part of the Detention Center and a considerable number of people pass through the booking area, including corrections officers, attorneys, maintenance workers, nurses, and anyone being booked.

2. We find Holmes's argument that the circuit court applied the wrong standard of review is not preserved for appellate review. This issue was not raised to and ruled upon by the circuit court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review."); *State v. Patterson*, 324 S.C. 5, 16, 482 S.E.2d 760, 765 (1997) (stating a contemporaneous objection is required to preserve issues for direct appellate review).

Even if this issue was preserved for review, we find there is evidence to support the circuit court's finding that sufficient evidence existed showing Holmes willfully or maliciously exposed his person or intended to expose his person. *See* § 16-15-130(A)(1) ("It is unlawful for a person to wilfully [sic], maliciously, and

indecently expose his person in a public place, on property of others, or to the view of any person on a street or highway."); *State v. Smith*, 359 S.C. 481, 490, 597 S.E.2d 888, 893 (Ct. App. 2004) ("In reviewing the denial of a motion for a directed verdict, this court must view the evidence in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find that the case was properly submitted to the jury.").  There is evidence tending to prove Holmes willfully took actions to ensure Officer DeSantis observed him exposing himself because there is evidence Holmes did not have undergarments on, he put one foot up on the bunk, positioned himself before the gap in the door, held his penis, moved his hand in an up-and-down-motion, banged on his cell door, and "did anything to direct attention to himself."  *See Willful*, *Black's Law Dictionary* (10th ed. 2004) (defining a willful act as one which is done voluntarily and intentionally); *id.* (noting "[a] voluntary act becomes willful in law, only when it involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong").  We also find there is evidence tending to prove Holmes's actions were deliberate and spiteful and, therefore, malicious because Officer DeSantis testified he yelled expletives at her, called her by her first name, and threatened that he knew where she lived.  *See Eaves v. Broad River Elec. Coop., Inc.*, 277 S.C. 475, 479, 289 S.E.2d 414, 416 (1982) (defining malice as "the deliberate intentional doing of a wrongful act without just cause or excuse"); *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 437, 629 S.E.2d 642, 649 (2006) (providing "[m]alice does not necessarily mean a defendant acted out of spite, revenge, or with a malignant disposition, although such an attitude certainly may indicate malice"); *id.* (stating "malice may be implied where the evidence reveals a disregard of the consequences of an injurious act, without reference to any special injury that may be inflicted on another person").

Accordingly, Holmes's conviction is

**AFFIRMED.**[1]

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.