648 S.E.2d 301

**Terry PRESSLEY, Employee/Claimant, Respondent,**

v.

**REA CONSTRUCTION COMPANY, INC., Employer,
and Zurich–American Insurance Company,
Insurer, Appellants.**

**No. 4266.**

Court of Appeals of South Carolina.

Heard April 5, 2007.
Decided June 27, 2007.

284

Stephen L. Brown, Matthew K. Mahoney, and Jeffrey J. Wiseman, all of Charleston, for Appellants.

Joe Ann Matthews Calvy, of Kingstree, for Respondent.

CURETON, A.J.:

REA Construction Co., Inc. and Zurich–American Insurance Co. (collectively "Insurer") appeal the circuit court's order requiring them to provide Terry Pressley with a wheelchair accessible mobile home and awarding Pressley compensation for ten hours per day of non-professional home healthcare services. We affirm in part, reverse in part and remand.[1]

## FACTS

On July 24, 2001, Pressley suffered a compensable injury to his spinal cord while working for REA. The injury rendered Pressley a paraplegic. Insurer admitted Pressley suffered a compensable injury and agreed Pressley was entitled to lifetime benefits. Accordingly, Insurer has continuously provided appropriate medical care and treatment to Pressley.

At the time of the accident, Pressley rented an apartment. After his injury, Pressley temporarily resided in various reha-

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

bilitation facilities and hospitals. In September 2002, Pressley moved in with his mother (Mother) where he has lived since. Initially, when Pressley moved in with Mother, professional caregivers attended to his needs about eight hours per day, five days a week. For reasons the record does not reveal, professional care has since diminished to four hours per day. Mother takes care of him at all other times.

At some point, to accommodate Pressley's needs, Insurer made minor modifications to Mother's house. However, the modifications only allowed Pressley to access his bedroom; Pressley could not access any other room, including the kitchen or the bathroom. Mother's house could be modified to become completely handicap accessible for a cost of approximately $68,400,[2] which, according to one estimate, is almost as much as the cost of a new house upfitted for wheelchair accessibility.

In June 2002, Pressley filed a Form 50 with the Workers' Compensation Commission seeking, in relevant part, increased medical care and wheelchair accessible housing. After a hearing, the Single Commissioner held Pressley was entitled to: (1) professional home healthcare for six hours a day, seven days a week; (2) non-professional healthcare (from Mother or other non-professional) for ten hours a day, seven days a week, at $7.00 per hour; and (3) wheelchair accessible housing. To determine the most appropriate method of providing wheelchair accessible housing, the single commissioner instructed Insurer to provide cost estimates for modifying Mother's house, providing a wheelchair accessible apartment, purchasing wheelchair accessible housing with ownership reverting to or retained by Insurer, and other appropriate options.

On appeal, an appellate panel of the Workers' Compensation Commission (hereafter Commission) affirmed the Single Commissioner. However, the Commission's order included two "amendments" to the Commissioner's order: "Housing: Carrier to provide handicap accessible housing-mobile home or residential care facility. If housing is mobile home, the own-

---

**2.** Pressley testified it would cost $70,000 to upfit his mother's home, while a contractor submitted an estimate for $68,400 to make the home wheelchair accessible.

ership remains with carrier. Finding of Fact # 7: [Pressley] entitled to eight hours professional home health care seven days a week; [Pressley] entitled to additional rehabilitation training." The circuit court affirmed the Commission's ruling "in regards to wheelchair accessible housing" and found Pressley was "entitled to eight hours of professional home healthcare as ordered by the [Commission]," and further held Pressley was "entitled to ten hours of non-professional care as ordered by the single commissioner." This appeal followed.

## STANDARD OF REVIEW

■ "The South Carolina Administrative Procedures Act governs judicial review of a decision of an administrative agency." *Clark v. Aiken County Gov't,* 366 S.C. 102, 107, 620 S.E.2d 99, 101 (Ct.App.2005). Section 1–23–380(A)(5) of the South Carolina Code (Supp.2006) establishes the substantial evidence rule as the standard of review. Under this standard, a reviewing court may reverse or modify an agency decision based on errors of law, but may only reverse or modify an agency's findings of fact if they are clearly erroneous. *See* 1–23–380(A)(5)(d) and (e).

■ "On appeal, this court must affirm an award of the Workers' Compensation Commission in which the circuit court concurred if substantial evidence supports the findings." *Peoples v. Henry Co.,* 364 S.C. 123, 127, 611 S.E.2d 527, 528–29 (Ct.App.2005). " 'Substantial evidence' is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action." *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981) (citation omitted).

■ The primary rule of statutory construction is that the courts must ascertain the intention of the legislature. *Cooper v. Moore,* 351 S.C. 207, 212, 569 S.E.2d 330, 332 (2002). The interpretation of a statute involves a question of law for the court. *Charleston County Parks Rec. Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). Thus, this court is free to decide matters of law with no particular deference to the trial court. *Moriarty v. Garden Sanctuary Church of*

*God,* 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000). Nevertheless, ordinarily, the construction of a statute by an agency charged with its administration will be accorded the most respectful deference and will not be overruled absent compelling reasons. *Brown v. S.C. Dep't of Health Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002).

## LAW/ANALYSIS

### I. Purchase of Wheelchair Accessible Mobile Home

Insurer argues the circuit court erred in affirming the Commission's order requiring Insurer to purchase Pressley a wheelchair-accessible mobile home.[3] Specifically, Insurer contends the Commission does not have the statutory authority under § 42–15–60 of the South Carolina Code (1985) to require an Insurer to cover the total purchase price of a wheelchair accessible mobile home. Insurer contends the statute only gives the Commission authority to require the payment of necessary costs to make housing provided by claimant handicap accessible, i.e. the difference between a comparable new mobile home and a new modified mobile home.

Section 42–15–60 governs the Commission's award of reasonably necessary medical costs. Section 42–15–60 provides, in pertinent part: "In cases in which total and permanent disability results, reasonable and necessary nursing services, medicines, prosthetic devices, sick travel, medical, hospital and *other treatment or care* shall be paid during the life of the injured employee, without regard to any limitation in this title including the maximum compensation limit." (emphasis added). Thus, this appeal presents the novel issue of whether the Commission has the statutory authority to require an insurer to provide the base cost of furnishing an employee handicap accessible housing. Both parties rely on *Strickland v. Bowater, Inc.,* 322 S.C. 471, 472 S.E.2d 635 (Ct.App.1996) as furnishing the answer to this question.

---

**3.** We note the Commission's order appears to provide that the purchase of the mobile home is one option Insurer may undertake and does not specifically require Insurer to purchase the mobile home.

In *Strickland,* this court analyzed whether 42–15–60, in particular the provision allowing for "other treatment or care," authorizes the Commission to require an Insurer to pay the full cost of a van modified to accommodate the handicapped claimant. In *Strickland,* the employer agreed to pay the costs associated with modifying the van and acquiesced to the Commission's order to pay the cost difference between an unmodified van and a mid-range automobile of the same year. On appeal, the employee argued the Insurer should also be required to pay the "base cost" of the modified van. We held: "While the provisions of the workers' compensation law are entitled to a liberal construction in favor of the employee, we do not believe that under our present statute an employer could be required to pay for [the base costs of the unmodified van]." *Id.* at 474, 472 S.E.2d at 637.

In *Thompson v. S.C. Steel Erectors,* 369 S.C. 606, 632 S.E.2d 874 (Ct.App.2006) (cert. pending), we examined whether the Commission erred in denying an employee's request for funds to upfit his new home to accommodate his special needs. In *Thompson,* the Commission ordered employer to advance the employee a lump sum to purchase a new home; however, the Commission did not require the employer to pay the costs for modifying the employee's new home. *Id.* at 610–11, 632 S.E.2d at 877. Both parties appealed. This court affirmed the partial-lump sum award [4] and held the employer must also pay to upfit the employee's home because "[t]he modifications are necessitated solely by [employee's] admittedly compensable injury." *Id.* at 619, 632 S.E.2d at 882. Thus, the employer was required to both advance sums to purchase the employee's new home, and pay the cost to modify it.

While *Strickland* and *Thompson* offer guidance as to the appropriate interpretation of 42–15–60, neither case controls our analysis in the present appeal. In *Strickland,* the employer agreed to pay certain costs directly connected to employee's handicapped condition (the costs of modification and increased price of van over average mid-size car). As such, *Strickland* only stands for the proposition that the Commission has authority to require an employer to pay for that portion of the

4. This lump-sum was to be deducted from the employee's life time benefits.

base cost an employee's unmodified van that exceeds the price of an average mid-sized car. Similarly, in *Thompson*, the employer only argued the partial-lump sum advance for the new house, i.e. the "base cost," violated section 42–9–10 of the South Carolina Code (Supp.2005); the employer did not contend the Commission lacked the authority to make such an award. *Id.* at 614–15, 632 S.E.2d at 879. Accordingly, *Thompson* fails to articulate whether 42–15–60 allows the Commission to require the employer to pay the "base cost" of the employee's new home.

Inasmuch as our Worker's Compensation Act is modeled after the North Carolina Act, we naturally look to North Carolina's decisions in interpreting similar provisions. As stated in *Strickland*, the North Carolina Supreme Court held in *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986) that "other treatment or care" as contained in its statute required an employer to provide an employee with wheelchair-accessible housing. However, we note that in the subsequent North Carolina Court of Appeals case of *Timmons v. N.C. Dep't of Transp.*, 123 N.C.App. 456, 462–63, 473 S.E.2d 356, 360 (Ct.App.1996), that court found that the employer did not have to absorb the entire cost of constructing the claimant's new residence. The court reasoned:

> We do not agree with [claimant], however that *Derebery* requires [employer] to pay the entire cost of constructing his residence. As pointed out by Justice (later Chief Justice) Billings in her dissent in *Derebery*, the expense of housing is an ordinary necessity of life, to be paid from the statutory substitute for wages provided by the Workers' Compensation Act. The costs of modifying such housing, however, to accommodate one with extraordinary needs occasioned by a workplace injury, such as the [claimant] in this case, is not an ordinary expense of life for which the statutory substitute wage is intended as compensation.

*Id.* at 461–62, 473 S.E.2d at 359 (affirmed by *Timmons v. N.C. Dep't of Transp.*, 346 N.C. 173, 484 S.E.2d 551 (1997)).

█ We are in agreement with what appears to be the law of North Carolina that the base cost of providing an injured employee housing is an ordinary necessity of life which the statutory substitute for wages should be utilized by the em-

ployee to obtain. We, therefore, reverse the circuit court's order to the extent it holds that section 42–15–60 permits the Commission to order an employer to pay the base cost of handicap accessible housing.

At oral argument, it developed that although the employer is willing to provide care for Pressley in a residential care facility, Pressley has refused the same. On the other hand, although Pressley appealed to the circuit court the Commission's failure to "enter specific findings as to its basis/rationale for determining that [employer] is only required to provide [him] handicap accessible housing-mobile home or residential care facility," he has not appealed the failure of the trial court to address that issue. Moreover, the Commission adopted "in toto" the findings of fact of the Single Commissioner which required Insurer to provide a factual basis to enable it to determine what type of handicap accessible housing would be appropriate for Pressley. This has never been done, and the Commission did not have this information before it when it made its decision. The posture of the case is further complicated by the failure of the Commission and trial court to specify whether Insurer or Pressley has the option to choose which of the two types of housing enumerated in the Commission's order the Insurer must provide.

■ Under the unique facts of this case, it appears that under both *Strickland* and *Thompson,* the Commission could have ordered the Insurer to absorb the cost to modify Pressley's mother's house. Moreover, the record indicates that the cost to modify the mother's house totals between $68,400 [5] and $70,000.[6] According to the trial court, the apparent reason for the Commission not ordering that option was its economic infeasibility. Under the confused posture of this case, justice demands we remand to the Commission to determine what wheelchair accessible housing is appropriate in light of our decision that the statute does not permit the Commission to require the employer to pay the base cost of a wheelchair accessible mobile home.

5. As stated by a builder.

6. As testified to by Pressley.

## II.   Non–Professional Care

Insurer argues the circuit court erred in finding Pressley was entitled to receive ten hours per day of non-professional home healthcare.  We agree.

Section 42–15–60 also controls our analysis of this issue. Pursuant to section 42–15–60, an injured employee is entitled to receive "reasonable and necessary nursing services."

> The Single Commissioner, under findings of fact # 7 held: [Pressley] is entitled to professional home health care for 6 hours a day, 7 days a week.  [Pressley]'s mother or other non-professional should be paid $7.00 an hour for 10 hours a day, 7 days a week.  This is a total of 16 hours of health care [sic] and/or assistance per day.

The Commission's order also contained an amendment which read: "Finding of Fact # 7: [Pressley] entitled to eight hours professional home health care seven days a week; [Pressley] entitled to additional rehabilitation training."  The circuit court held Pressley was entitled to eight hours professional home healthcare as ordered by the Commission and ten hours non-professional care as ordered by the Single Commissioner.   The circuit court also remanded the case to the Commission to determine the appropriate compensation rate for non-professional healthcare providers.

Insurer contends the Commission's order implicitly reversed the Single Commissioner's order in regards to non-professional care.  We agree.  The Commission's order amends finding of fact # 7 to award 8 hours of professional care and eliminates any requirement to pay for non-professional care.  Pressley appealed the Commission's failure to provide for non-professional care to the circuit court, which awarded 10 hours of non-professional care daily.

Before the Single Commissioner, Pressley testified he needs assistance throughout most of the day and, at times, when he wakes in the middle of the night.  Pressley also testified he believes he needs help twenty-four hours a day.  Further, a doctor's evaluation provides that while Pressley is able to perform some self-care functions he "will always need a caregiver to assist him with all the activities of daily living."  On the other hand, Dr. Adora Matthews of Palmetto Rehabilita-

tion Medicine stated that "Pressley will benefit from some care in the home, probably up to 8 hours per day."

■ Although there is evidence that some non-professional care is needed, there is no basis for the finding of the circuit court awarding 10 hours of non-professional care.[7] After a thorough review of the record, we hold substantial evidence supports the finding of the Commission regarding the professional care needed by Pressley, but not a finding that Pressley does not need any non-professional home care. Moreover, while the circuit court could have found the evidence mandated remand to the Commission for a determination of the appropriate hours of nonprofessional care, the court was not free to establish the hours at ten hours per day. We therefore remand to the Commission the issues of the appropriate number of non-professional hours of care Pressley is entitled to and the establishment of the rate to be paid for that care.

## CONCLUSION

We find the circuit court erred in concluding the Insurer was required to provide Pressley with a handicap accessible mobile home. Additionally, the court erred in ordering employer to pay for ten hours per day of non-professional care. We therefore remand this case to the Commission to determine the appropriate handicap accessible housing for Pressley, the appropriate number of hours of non-professional care he may be entitled to receive, and the rate at which the care is to be paid. On both issues, the Commission shall with specificity set forth the basis for its decision in accordance with *Shealy v. Aiken County*, 341 S.C. 448, 535 S.E.2d 438 (2000) and *Baldwin v. James River Corp.*, 304 S.C. 485, 405 S.E.2d 421 (Ct.App.1991). Accordingly, the order of the circuit court is

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

BEATTY and WILLIAMS, JJ., concur.

---

7. In this regard, the Commission, not the circuit court is the fact finder as to how much non-professional care Pressley is entitled to.