681 S.E.2d 615

**Roger Dale WATT, Respondent,**

v.

**PIEDMONT AUTOMOTIVE and Piedmont Chrysler Plymouth, Employers, and AmComp and S.C. Automobile Dealers Association, Carrier, Appellants.**

No. 4572.

Court of Appeals of South Carolina.

Heard March 17, 2009.

Decided June 25, 2009.

204

Weston Adams, III, Jillian M. Benson, Ashley B. Stratton, and Helen Hiser of Columbia, for Appellants.

Louise E. Mozingo, of Camden, for Secondary Appellants.

William N. Epps, Jr., Samantha P. Nelson, of Anderson, for Respondent.

HUFF, J.

Piedmont Automotive and Piedmont Chrysler Plymouth, Employers, and AmComp and South Carolina Automobile Dealers Association, Carriers, (collectively Employers) appeal the order to the circuit court reversing the Appellate Panel of the Workers' Compensation Commission's decision denying Roger Dale Watt's claim for benefits. We reverse.

## FACTS/PROCEDURAL HISTORY

Watt began working with Piedmont Honda as a technician and team leader in 1991. He was quickly promoted to service manager. In 1993 he became the parts and service director

and served in that position for a year until another parts manager was hired. He was promoted to service director of both the Honda dealership and Piedmont Chrysler Plymouth in 1995. He was removed as service director of the Chrysler dealership in January of 2000, but retained his position as service manager of the Honda dealership. On January 30, 2001, he was terminated from this position.

The next day Watt saw his cardiologist, Dr. Ware, who diagnosed him as experiencing the signs and symptoms of congestive heart failure and unstable angina pectoris. Dr. Ware had Watt admitted to Anderson Memorial Hospital for a heart catherization, which showed three blockages. Watt was transferred to Greenville Hospital, where he had triple by-pass surgery. Since that time, Watt has been unable to work by doctor's orders.

Watt has had heart problems and has been under the care of a cardiologist since 1991. He has been diagnosed with coronary atherosclerotic disease and congestive cardiomyopathy. In addition, he has chronic hypertension and hyperlipidemia.

Watt filed this workers' compensation action claiming he suffered an accidental injury to his heart and cardiovascular system, which culminated in total disability on or about January 30, 2001. He asserted Piedmont Honda's implementation of a "Net Profit" program in January of 2000 produced an extraordinary working condition causing him stress that aggravated his cardiovascular disease and caused the blockage of his coronary arteries. Employers denied the claim. The single commissioner held that pursuant to section 42–1–160 of the South Carolina Code, Watt did not sustain a personal injury because he failed to establish the stressful employment conditions causing the injury were extraordinary and unusual in comparison to the normal conditions of employment. The commissioner held that Watt suffered from angina on the date of his alleged injury and angina is not compensable because it did not cause any disability. The commissioner found Watt's claim was barred by the notice provision of section 42–15–20 of the South Carolina Code because he failed to notify Employers of a work-related accident within ninety days from the date of the alleged accident. Finally, the commissioner ruled

an employer/employee relationship did not exist on the date of the alleged accident, January 31, 2001. The Appellate Panel of the Workers' Compensation Commission affirmed. The circuit court, however, reversed on all grounds. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes our standard of review of decisions by the South Carolina Workers' Compensation Commission. Accordingly, this court can reverse or modify the Appellate Panel's decision only if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(5) (Supp.2008); *Shealy v. Aiken County*, 341 S.C. 448, 454, 535 S.E.2d 438, 442 (2000). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Shealy*, 341 S.C. at 455, 535 S.E.2d at 442. The possibility of drawing two inconsistent conclusions does not prevent the Appellate Panel's conclusions from being supported by substantial evidence. *Tiller v. Nat'l Health Care Ctr.*, 334 S.C. 333, 338, 513 S.E.2d 843, 845 (1999). The final determination of witness credibility and the weight to be accorded evidence is reserved to the Appellate Panel. *Shealy*, 341 S.C. at 455, 535 S.E.2d at 442.

## LAW/ANALYSIS

1. Injury by accident arising out of and in the course of employment

Employers argue the circuit court erred in determining Watt suffered an injury by accident arising out of and in the course of employment when Watt was not subjected to unusual and extraordinary conditions of employment. We agree.

An employee may recover workers' compensation benefits if he sustains an "injury by accident arising out of and in the course of the employment." S.C.Code Ann. § 42–1–160(A) (Supp.2008); *Jordan v. Kelly Co.*, 381 S.C. 483, 486, 674

S.E.2d 166, 168 (2009); Section 42–1–160(C) of the South Carolina Code (Supp.2008) provides:

Stress, mental injuries, heart attacks, strokes, embolisms, or aneurisms arising out of and in the course of employment unaccompanied by physical injury are not considered compensable if they result from any event or series of events which are incidental to normal employer/employee relations including, but not limited to, personnel actions by the employer such as disciplinary actions, work evaluations, transfers, promotions, demotions, salary reviews, or terminations, except when these actions are taken in an extraordinary and unusual manner.

"The general rule is that a heart attack is compensable as a worker's compensation accident if it is induced by unexpected strain or overexertion in the performance of the duties of a claimant's employment or by unusual and extraordinary conditions of employment." *Jordan,* 381 S.C. at 486, 674 S.E.2d at 168.

In *Jordan,* the employee, a truck driver, suffered a heart attack following a long haul route from Virginia to Texas. 381 S.C. at 484, 674 S.E.2d at 167. The employee contended he was entitled to workers' compensation benefits because his heart attack was proximately caused by unusual and extraordinary duties of the long haul, which included a seven hour departure delay, having to leave without the necessary permits until he could pick up faxed copies at a truck stop, and not being able to take the exit his permit required him to take and therefore having to drive through downtown Houston, barely making the extended deadline. *Id.* at 485, 674 S.E.2d at 167–68. Although the Appellate Panel denied the employee compensation, the circuit court reversed. The supreme court found the circuit court's decision was in error. The court noted that while the employee testified the haul was very stressful, his boss and co-worker testified that the employer did not impose deadlines and it was not unusual for employees to deviate from their routes due to construction. The employee admitted that he had left without permits on prior deliveries and then picked up faxed copies at the nearest truck stop. In addition, the employee had several risk factors for heart attacks: he smoked cigarettes, abused alcohol, suffered from high blood pressure, and had a family history of heart disease. *Id.* at 486–87, 674 S.E.2d at 168–69.

The supreme court held that while the record contained conflicting evidence, it was not in a position to weigh the evidence presented in a workers' compensation hearing. *Id.* at 487, 674 S.E.2d at 169. Thus, the supreme court ruled substantial evidence supported the Appellate Panel's finding that the employee's heart attack was not induced by unexpected strain or overexertion in the performance of the duties of his employment or by unusual and extraordinary conditions of employment. *Id.*

In the present case, the Appellate Panel held Watt's disability was caused by his underlying coronary artery disease and his cardiomyopathy, both of which he had for several years. Dr. Ware, Watt's cardiologist, testified that angina did not damage Watt's heart, but rather was a warning about the insufficiency of blood supply to the heart caused by the underlying heart disease. There is no question that Watt has suffered from heart conditions during the prior decade. Watt first saw Dr. Ware in June of 1991 for unstable angina pectoris. A cardiac catheterization at that time showed a high grade obstruction of his right coronary artery. He had angioplasty as a result. In the mid–1990s, he developed congestive heart failure and poor left ventricle function. Dr. Ware felt that Watt had developed a second condition, congestive cardiomyopathy. Watt was treated medically and was instructed to follow certain dietary restrictions, lose weight, exercise more, and limit his stress at work. However, as Dr. Ware noted, Watt was unable to comply with any of these instructions. In addition to the heart conditions, Watt suffered from gastroesophageal reflux, anxiety, and depression. He has numerous risk factors for coronary artery disease including obesity, hyperlipidemia, and hypertension. Dr. Ware noted these factors were difficult to control because of Watt having difficulty with compliance with medical directions. In addition, Watt has a family history of heart disease.

Watt asserts the unusual stress and strain and/or extraordinary conditions in his workplace aggravated his prior existing coronary artery disease, which resulted in total disability. Dr. Ware opined that stress contributed to a progression of Watt's coronary artery disease, along with other factors. Watt testified that Piedmont Honda's implementation of the Net Profit

system in January of 2000 placed extraordinary stress on him. He claimed the system redesigned the whole service process resulting in double the paper work and much longer hours for him. He stated he went to work before daylight and would work until 8:00 or 9:00 at night. He related that the new system angered the customers and he would have to handle their complaints. He also had to call the customers at night and would sometimes take the list of customers home with him to complete his calls. During the year of Net Profit's implementation, Watt had more chest pains and felt tired. He was depressed because the new system was not working well, upsetting the technicians as well as the customers and he had to handle their complaints. Watt stated he was told he would be fired if he did not implement the new system. Sean Parkhurst, a former employee of Piedmont Honda, similarly testified that the implementation of the Net Profit system doubled Watt's work. He stated Watt always appeared tired and worked late every night.

In contrast, Gary Billy Vinson, the shop foreman and assistant service manager at Piedmont Honda, testified the Net Profit system merely changed the way customers were greeted and the way repair orders were written. He stated it did not change the amount of work needed or cause Watt to work extra hours, other than a 45 minute meeting once a week. Vinson, who handled customer complaints when Watt was not there, testified the system did not upset the customers. He stated that while not all of the employees liked the new system, some did.

Similarly, Jeff Searcy, the general manager of Piedmont Automotive, testified the Net Profit system did not change anything other than the way customers were greeted and the way repair orders were written. He stated the implementation of Net Profit would not have necessitated Watt having to stay and work until 9:00 at night. He denied threatening to fire Watt if he did not implement the new system. William Dial, Piedmont Honda's Chief Financial Officer, testified that his office looked directly into Watt's office. He stated he usually left the office between 7:00 and 8:00 at night and rarely saw Watt still in his office when he left. He claimed the implementation of Net Profit would not have necessitated Watt's having to stay late at night. He denied that it created problems or made customers unhappy.

Although, as in *Jordan,* the record contains conflicting evidence, this court may not weigh the evidence. 381 S.C. at 487, 674 S.E.2d at 169 (holding "that the final determination of witness credibility and the weight to be accorded evidence is reserved to the [Appellate Panel], and it is not the task of an appellate court to weigh the evidence as found by the [Appellate Panel]"). There is substantial evidence in the record that Watt was accustomed to working 55 and 60 hour weeks in the years preceding the implementation. In addition, there is substantial evidence to support the Appellate Panel's conclusion that the implementation of Net Profit did not result in unusual or extraordinary conditions of employment for Watt or that Watt was subject to unusual or extraordinary conditions of employment in comparison to the normal conditions of his employment. Accordingly, the circuit court erred in reversing the order of the Appellate Panel.

2. Notice

▮ Employers assert the circuit court erred in reversing the Appellate Panel's determination that Watt failed to provide adequate and timely notice. We agree.

Section 42–15–20(A) of the South Carolina Code (Supp. 2008) requires an injured employee to immediately "on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a notice of the accident." Generally, the injury is not compensable unless notice is given within ninety days. S.C.Code Ann. § 42–15–20(B) (Supp.2008).

In ruling Watt had satisfied the notice requirement, the circuit court found Piedmont Honda had been aware of Watt's heart condition during his years there. In addition, it held Piedmont Honda was provided notice in February 2001 when Watt's wife informed Dial, one of Watt's supervisors, that Watt was in the hospital and was going to have open heart surgery.

While several Piedmont employees testified that they knew of Watt's heart condition, they did not testify that they knew he believed his heart condition to be work-related. At the hearing, Watt's wife testified that before Watt was transferred to Greenville Hospital she went to Piedmont Honda and spoke with Dial. She told him that Watt was in the hospital and

would have open heart surgery because of the stress he had been under. Sean Parkhurt, a former employee of Piedmont Honda testified that a few days after Watt was fired, he saw Watt's wife visit the dealership and speak to Dial. Dial, however, denied having this conversation with Mrs. Watt. He stated he did not learn that Watt was making a workers' compensation claim until December of 2001. Dial's testimony provides substantial evidence for the Appellate Panel's ruling that Watt failed to provide the required notice. It is the Appellate Panel, rather than the circuit court or this court, that determines the credibility of witnesses and resolves disputes between witnesses. *See Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 492–93, 541 S.E.2d 526, 528 (2001) ("Where there is a conflict in the evidence, either by different witnesses or in the testimony of the same witness, the findings of fact of the [Appellate Panel] are conclusive."). Accordingly, the circuit court erred in reversing the Appellate Panel on this issue.

## CONCLUSION

For the above stated reasons, the decision of the circuit court is

**REVERSED.**[1]

WILLIAMS and KONDUROS, JJ., concur.

---

1. At oral argument, Employers conceded the issue regarding the employment relationship at the time of the injury.