710 S.E.2d 454

**Lisa MURPHY, Employee, Respondent,**

v.

**OWENS CORNING, Employer, and Gallagher Bassett Services, Carrier, Appellants.**

**No. 4807.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2011.

Decided March 9, 2011.

78

William E. Shaughnessy and Michael B. Eller, of Greenville, for Appellants.

Bryan D. Ramey, of Piedmont; and John S. Nichols, of Columbia, for Respondent.

SHORT, J.

Owens Corning, Employer, and Gallagher Bassett Services, Carrier (collectively, Appellants), appeal the Workers' Compensation Commission's order finding Lisa Murphy sustained compensable injuries arising from repetitive trauma to her back, shoulders, hands, and arms. We affirm as modified.[1]

## FACTS

Murphy is employed as a sliver handler at Owens Corning. Her job requires her to reach for hot glass pieces above her head and pull them down into strands. Murphy then looks up to inspect for leftover beads that could plug the bushings, and winds the strands onto a chopper. She testified she is taller than most of the other sliver handlers, and her height requires her to stay bent over and look up while she pulls down approximately four thousand glass pieces during her eight-hour shift. Murphy's work shifts alternated, sometimes requiring her to work seven days in a row. At the time of the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

hearing before the single commissioner in 2008, Murphy had been employed by Owens Corning for nineteen years, approximately five as a sliver handler at least part time, and six as a full-time sliver handler.

Between 2003 and 2005, Murphy began experiencing pain in her neck, severe headaches, and tingling in her fingers. She was treated by Dr. Stephen F. Worsham. In notes dated May 3, 2004, Worsham wrote: "[Murphy] states that the work rigors are too much for her to handle." On June 2, 2004, Worsham concluded: "[Murphy] may think about seeking for (sic) another type of employment if this is going to be a continued difficulty." In August 2007, Worsham recommended Murphy stay out of work for four weeks, and referred her to Dr. Aaron C. MacDonald of the Piedmont Neurosurgical Group, P.A.

MacDonald saw Murphy on August 29, 2007, and reported an "MRI of the cervical spine show[ed] cervical spondylosis and disc bulging at C5–6 and C6–7 causing possible neural impingement." [2] MacDonald concluded Murphy's two bulging disks probably came from the "disks irritating the nerve roots from the chronic extension that [Murphy] was in." MacDonald opined to a reasonable degree of medical certainty that Murphy's work made her symptoms worse. When asked regarding a direct causal relationship between Murphy's job and the exacerbation of her symptoms, MacDonald stated: "[H]er symptoms were made worse by the position that she was in to do her job."

Murphy testified she felt better when she was on leave in 2007, and she did not realize her symptoms were related to her job until her visit to Worsham on September 7, 2007, after she saw MacDonald. Worsham's notes state: "[Murphy] has been seen by Dr. M[a]cDonald, who feels it is not surgical, although it is causing her some difficulty and continues to cause her difficulty with the type of repetitious over-the-head work that she does." Murphy reported her injuries to Owens Corning that day. Murphy returned to work, and remained working as of the date of the hearing before the commissioner. She did not seek temporary total disability, but sought medical

---

2. Murphy stipulated she had cervical spondylosis "probably from birth."

care under the Workers' Compensation Act. Murphy did not recall Worsham recommending she find alternate employment in 2004.

Appellants submitted the findings of its medical expert, Dr. Glenn L. Scott. Scott reported he reviewed Murphy's medical records and inspected other employees performing the sliver handler's job at the work site. He concluded her "cervical spondylosis was not caused by her work, nor has her work caused any permanent damage, nor has it accelerated the condition itself." Scott did not examine Murphy or view her at the job site.

The single commissioner found "the preponderance of the evidence is that there is a direct causal connection between the repetitive activities of [Murphy's] job and the aggravation of her ... condition. This finding is based on the medical records...." The commissioner found: (1) Murphy sustained an injury by accident arising out of and in the course of her employment under section 42–1–160; and (2) Murphy first knew her condition was work-related on September 7, 2007, and she gave timely and proper notice.

The Commission held a hearing, sustained the commissioner's order in its entirety, and found: (1) Murphy suffered an aggravation of her underlying condition by the repetitive trauma of performing overhead work on her job; (2) the finding was based on the record as a whole, including the medical record; (3) by the preponderance of the evidence there was a direct causal connection between the repetitive activities of Murphy's job and the aggravation of her condition; (4) Murphy sustained an injury by accident under section 42–1–160; (5) Murphy first knew her condition was work-related on September 7, 2007; and (6) Murphy gave timely and proper notice.

## STANDARD OF REVIEW

■ The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the Commission. S.C.Code Ann. § 1–23–380 (Supp.2010); *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the substantial evidence standard of review, this court may not substitute its judgment

for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Stone v. Traylor Bros., Inc.,* 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004).

■ "Statutory interpretation is a question of law." *Hopper v. Terry Hunt Constr.,* 373 S.C. 475, 479, 646 S.E.2d 162, 165 (Ct.App.2007). This court is free to decide matters of law with no particular deference to the fact finder. *Pressley v. REA Constr. Co.,* 374 S.C. 283, 287–88, 648 S.E.2d 301, 303 (Ct.App.2007). "But whether the facts of a case were correctly applied to a statute is a question of fact, subject to the substantial evidence standard." *Hopper,* 373 S.C. at 479–80, 646 S.E.2d at 165.

## LAW/ANALYSIS

### I. Notice of Injury and Statute of Limitations

■ Appellants argue the Commission erred in finding Murphy gave proper and timely notice of her injury. Appellants also argue Murphy failed to file her claim within the time required under the statute of limitations. We find no reversible error.

Section 42–15–20(C) of the South Carolina Code requires an employee alleging a repetitive trauma injury to give notice "within ninety days of the date the employee discovered, or could have discovered by exercising reasonable diligence, that his condition is compensable. . . ." S.C.Code Ann. § 42–15–20(C) (Supp.2010). Section 42–15–40 bars a claim alleging a repetitive trauma injury unless the claim is filed "within two years after the employee knew or should have known that his injury is compensable. . . ." S.C.Code Ann. § 42–15–40 (Supp. 2010). The statutory notice requirements under sections 42–15–20 and 42–15–40 should be liberally construed in favor of claimants. *Etheredge v. Monsanto Co.,* 349 S.C. 451, 458, 562 S.E.2d 679, 683 (Ct.App.2002); *Rogers v. Spartanburg Reg'l Med. Ctr.,* 328 S.C. 415, 418, 491 S.E.2d 708, 710 (Ct.App. 1997).

■ The Commission's findings of fact regarding notice and the statute of limitations are reviewed under the substantial evidence standard of review. *See McCraw v. Mary Black*

*Hosp.,* 350 S.C. 229, 235, 565 S.E.2d 286, 289 (2002) (applying the substantial evidence rule in action appealing the Commission's findings of fact regarding whether claimant timely filed a claim under the statute of limitations); *Watt v. Piedmont Auto.,* 384 S.C. 203, 212, 681 S.E.2d 615, 620 (Ct.App.2009) (deferring to the Commission on the issue of notice and finding the Commission determines the credibility of witnesses); *Etheredge,* 349 S.C. at 456, 562 S.E.2d at 682 (applying substantial evidence standard of review to Commission's finding of timely notice within ninety days as required by statute).

Murphy testified she did not realize her symptoms were related to her job until September 7, 2007, and immediately reported to Owens Corning. Although there is some evidence supporting Appellants' argument that the medical records indicate Murphy should have known of her injuries in 2004, the Commission is the fact-finder, and found she "first knew her condition was work related on September 7, 2007. This is based on [Murphy's] testimony, the medical reports with special emphasis on Dr. Worsham's note of September 7, 2007[,] . . . and the record as a whole." We find substantial evidence in the record that Murphy provided timely and proper notice and is not barred by the statute of limitations.

## II. Compensability of Repetitive Trauma Injuries

■ Appellants argue that because Murphy's alleged injuries arise from repetitive trauma, the Commission erred in finding Murphy suffered an injury by accident arising out of and in the course of her employment under South Carolina Code section 42–1–160. Appellants concede that repetitive trauma injuries were compensable under section 42–1–160 prior to July 1, 2007. Appellants argue, however, the enactment of section 42–1–172 in 2007 defines and sets forth new requirements for repetitive trauma injuries. According to Appellants, the Commission thus erred in finding Murphy's injuries compensable under section 42–1–160. We agree but affirm as modified.

Section 42–1–160 provides in relevant part:

(A) "Injury" and "personal injury" mean only injury by accident arising out of and in the course of employment. . . .

. . . .

(F) The word "accident" as used in this title must not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously, or at frequent intervals in the course of such employment, over extended periods of time. *Any injury or disease attributable to such causes must be compensable only if culminating in a compensable repetitive trauma injury pursuant to Section 42–1–172 . . . .*

S.C.Code Ann. § 42–1–160 (Supp.2010) (emphasis added). Section 42–1–172 provides:

(A) "Repetitive trauma injury" means an injury which is gradual in onset and caused by the cumulative effects of repetitive traumatic events. *Compensability of a repetitive trauma injury must be determined only under the provisions of this statute.*

(B) An injury is not considered a compensable repetitive trauma injury unless a commissioner makes a specific finding of fact by a preponderance of the evidence of a causal connection that is established by medical evidence between the repetitive activities that occurred while the employee was engaged in the regular duties of his employment and the injury.

(C) As used in this section, "medical evidence" means expert opinion or testimony stated to a reasonable degree of medical certainty, documents, records, or other material that is offered by a licensed and qualified medical physician.

(D) A "repetitive trauma injury" is considered to arise out of employment only if it is established by medical evidence that there is a direct causal relationship between the condition under which the work is performed and the injury.

S.C.Code Ann. § 42–1–172 (Supp.2010) (emphasis added).

■ We agree that the compensability of a repetitive trauma injury must be determined by the Commission under the provisions of section 42–1–172. We find the Commission thus erred by failing to address section 42–1–172. Despite the Commission's error, we affirm as modified because although it cited section 42–1–160, the Commission made the findings required under section 42–1–172. *See Dykes v. Daniel Constr. Co.*, 262 S.C. 98, 109, 202 S.E.2d 646, 652 (1974) (concluding

that although the Commission failed to make the specific finding in the statutory language, its substantial compliance implied such a finding, enabling the court to properly review whether there was evidence to sustain the award). Compensability under section 42–1–172 requires a specific finding of fact, by the preponderance of the evidence, of a direct causal relationship, established by medical evidence, between the repetitive act and the employment. The single commissioner found in part that "the preponderance of the evidence is that there is a direct causal connection between the repetitive activities of [Murphy's] job and the aggravation of her ... condition. This finding is based on the medical records...." The Commission sustained the commissioner's order in its entirety, and found in part: (1) Murphy suffered an aggravation of her underlying condition by the repetitive trauma of performing overhead work on her job; (2) the finding was based on the record as a whole, including the medical record; and (3) there was a direct causal connection between the repetitive activities of Murphy's job and the aggravation of her condition. We find the Commission made the findings necessary under section 42–1–172 and, accordingly, affirm as modified. *See Callahan v. Beaufort Cnty. Sch. Dist.*, 375 S.C. 92, 97, 651 S.E.2d 311, 314 (2007) (affirming as modified in a workers' compensation action despite a claimant's failure to strictly comply with the statute).

### III. Aggravation of Pre–Existing Condition

■ Appellants next argue the Commission's findings of fact regarding aggravation of a pre-existing condition do not satisfy the requirements for compensability under section 42–9–35 of the South Carolina Code because Murphy did not prove a subsequent injury or a subsequent disability. We disagree.

Section 42–9–35 applies to the aggravation of a pre-existing condition and provides in relevant part:

(A) The employee shall establish by a preponderance of the evidence, including medical evidence, that:

(1) the *subsequent injury* aggravated the preexisting condition or permanent physical impairment; or

(2) the preexisting condition or the permanent physical impairment aggravates the subsequent injury.

(B) The commission may award compensation benefits to an employee who has a permanent physical impairment or preexisting condition and who incurs a *subsequent disability* from an injury arising out of and in the course of his employment for the resulting disability of the permanent physical impairment or preexisting condition and the subsequent injury.

S.C.Code Ann. § 42–9–35 (Supp.2010) (emphasis added).

 The claimant's right to compensation for aggravation of a pre-existing condition arises when the claimant has a dormant condition that becomes disabling because of the aggravating injury. *Anderson v. Baptist Med. Ctr.*, 343 S.C. 487, 493, 541 S.E.2d 526, 528 (2001). We review the Commission's factual findings of whether a claimant is entitled to compensation for aggravation of a pre-existing condition under the substantial evidence standard of review. *Brown v. R.L. Jordan Oil Co.*, 291 S.C. 272, 274–75, 353 S.E.2d 280, 282 (1987).

The Commission found Murphy:

suffered an aggravation of her underlying neck condition by the repetitive trauma of performing overhead work on her job. The aggravation has manifested itself in neck pain, headaches, shoulder pain, arm pain and hand pain. This finding is based on the record as a whole, including the medical record and deposition testimony of Dr. M[a]cDonald that the job aggravated [Murphy's] condition.... The preponderance of the evidence is that there is a direct causal connection between the repetitive activities of [Murphy's] job and the aggravation of her underlying neck condition. This finding is based on the medical reports ... and on Dr. M[a]cDonald's deposition....

We find that although the Commission did not refer to section 42–9–35 in its order, it made the necessary findings under the statute. Accordingly, we affirm as modified.

## CONCLUSION

Based on the foregoing analysis, the order on appeal is **AFFIRMED AS MODIFIED.**

HUFF and PIEPER, JJ., concur.