781 S.E.2d 146

Boisha WOFFORD, alleged surviving spouse, and Kaelyn Wofford, surviving child, on behalf of Brian Wofford, deceased employee, Appellants,

v.

CITY OF SPARTANBURG, through the SOUTH CAROLINA MUNICIPAL INSURANCE TRUST, Respondents.

Appellate Case No. 2014–001269.

No. 5369.

Court of Appeals of South Carolina.

Heard Oct. 14, 2015.

Decided Dec. 9, 2015.

Rehearing Denied Jan. 21, 2016.

154

Kenneth C. Anthony, Jr., and Kenneth Jay Anthony, both of the The Anthony Law Firm, P.A., of Spartanburg, for appellants.

Helen Faith Hiser, of McAngus Goudelock & Courie, LLC, of Mount Pleasant; and Stephanie Lamb Pugh, of Turner Padget Graham & Laney, P.A., of Greenville, for respondents.

LOCKEMY, J.

Boisha Wofford and Kaelyn Wofford (Claimants) appeal the Appellate Panel of the South Carolina Workers' Compensation Commission's order finding Brian Wofford was not acting

within the course and scope of his employment at the time of his death under an exception to the "going and coming rule."[1] We affirm.

## FACTS

Wofford, the former Superintendent of the Parks and Recreation Department for the City of Spartanburg (the City), died in a motorcycle accident in Moore, South Carolina. Wofford was on his way from his mother's home in Moore to one of the City's recreational centers. The accident occurred around 11:15 a.m.

At the hearing before the single commissioner, the City's aquatics director, Tracey Ballew, recalled calling Wofford on the morning of the accident to ask him to meet her at the City's swim center to sign some forms and retrieve a key from the Department's C.C. Woodson Recreational Center. Ballew stated Wofford told her he "was going directly to [C.C. Woodson Recreational Center] to get the key, and then coming to the Swim Center."

Scott Page, the City's Parks Manager, testified Wofford often worked out of other recreation centers, including the C.C. Woodson Recreational Center. Similarly, Deborah McClary, an administrative assistant, stated Wofford often worked at several different locations, including the Department's main office, the four recreational centers, the swim center, and the City's parks.

Mitchell Kennedy, the City's Director of Community Services and Wofford's supervisor, testified Wofford's job duties involved traveling between the various recreational centers and parks. Kennedy testified he often communicated with employees via phone, e-mail, and text, even when he or the employees were not at work. Kennedy explained, "I have communicated with employees, based upon certain circumstances, where I knew that they were not at work and I may have a task. . . . So I would not consider [them] on the job if I knew that . . . person was not at work." Kennedy stated it was not unusual for Wofford to fulfill requests like Ballew's to retrieve keys and sign forms. Additionally, Kennedy ex-

---

1. Boisha is Wofford's surviving spouse and Kaelyn is Wofford's surviving child.

plained it was common for Wofford to travel among the various recreational centers, parks, and swim centers. According to Kennedy, Wofford had discretion in setting his work hours.

Janice Littlejohn, Wofford's mother, testified Wofford came to her house in Moore on the morning of the accident to pick up his motorcycle, which he stored at her home. Littlejohn stated her home was in the opposite direction of Wofford's office. Littlejohn recalled Wofford had two business-related phone calls while he was visiting her. Wofford was at Littlejohn's home for approximately three hours. When Wofford left Littlejohn's home, he told her he was on his way to work.

The single commissioner concluded Wofford did not suffer a compensable injury because Claimants failed to show his accident arose out of and in the course of his employment as Wofford was not working at the time of his accident. Further, the commissioner found the remote communication that Wofford had with other City employees did not rise to the level such that his actions were within the course and scope of his employment. Even if his communication made his actions within the course and scope of his employment, the commissioner concluded Wofford's decision to drive to his mother's home to visit her for three hours and pick up his motorcycle resulted in a substantial deviation from his employment.

Finally, the commissioner found there were no applicable exceptions to the going and coming rule. The commissioner noted Wofford's accident occurred on the way to work, and Wofford did not have any work-related duties to perform on the way to work nor was he under the control of the City. The commissioner also found the special errand exception to the going and coming rule was inapplicable because Wofford was not charged with a task on his way to work. The commissioner further found Wofford was going to work to perform his typical job duties and it was common for Wofford to work at his office, the recreational centers, or at a City event.

The parties cross-appealed to the Appellate Panel of the Commission. On appeal, Claimants argued two points to reverse the single commissioner. First, Claimants asserted Wofford was working while he was visiting his mother because he was emailing and calling employees. Second, Claimants maintained Wofford's accident met an exception to the going

and coming rule because he was on a special errand to retrieve keys for Ballew. The Appellate Panel affirmed the single commissioner's findings in full. This appeal followed.

## STANDARD OF REVIEW

■ "The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the Commission." *Murphy v. Owens Corning*, 393 S.C. 77, 81, 710 S.E.2d 454, 456 (Ct.App.2011) (citing S.C.Code Ann. § 1–23–380 (Supp.2014)). "Under the substantial evidence standard of review, this court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Id.* at 81–82, 710 S.E.2d at 456.

## LAW/ANALYSIS

### I. Two Issue Rule

Initially, the City claims the two issue rule bars Claimants' appeal because the Appellate Panel denied their claim on multiple grounds, but the Claimants appealed only one of those grounds. The City asserts even if this court reverses the Appellate Panel's findings on the going and coming rule, Claimants could not succeed on appeal because the Appellate Panel found Wofford's trip to his mother's house was a substantial deviation from his employment. Second, the City maintains Wofford did not meet an exception to the going and coming rule. Initially, the City notes Claimants have not indicated which exception to the going and coming rule applies. Further, the City argues none of the exceptions apply because Wofford was on his way to work to perform his normal job duties and merely volunteered to pick up a key for Ballew.

Claimants assert the two issue rule does not apply here. Claimants argue that if Wofford was engaged in a special task for his employer and met an exception under the going and coming rule, then the Appellate Panel's other rulings would be "invalidated." We find the two issue rule does not apply here.

■ "Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case." *Jones v. Lott,*

387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010). "It should be noted that although cases generally have discussed the 'two issue' rule in the context of the appellate treatment of general jury verdicts, the rule is applicable under other circumstances on appeal, including affirmance of orders of trial courts." *Anderson v. S.C. Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 420 n. 1, 472 S.E.2d 253, 255 n. 1 (1996).

> For example, if a court directs a verdict for a defendant on the basis of the defenses of statute of limitations and contributory negligence, the order would be affirmed under the "two issue" rule if the plaintiff failed to appeal both grounds or if one of the grounds required affirmance.

*Id.*

██ We find the two issue rule does not apply here because Claimants presented two reasons why their claim was compensable—(1) Wofford had worked all morning by communicating remotely with other City employees and (2) he met an exception to the going and coming rule once he left his mother's home. The Appellate Panel found Wofford's communications did not rise to the level that would bring his actions at his mother's home within the course and scope of his employment, and even if they did, he substantially deviated from his employment by visiting his mother in Moore. Further, the Appellate Panel found no applicable exceptions to the going and coming rule applied because retrieving the key and signing forms for Ballew was within Wofford's ordinary job duties. Although Claimants did not appeal the Appellate Panel's ruling that Wofford's phone calls and e-mails to other employees at his mother's home did not rise to the level such that his actions were within the scope of his employment, they did appeal the Appellate Panel's finding that Wofford did not meet an exception to the "going and coming rule" once he left his mother's home. We find the Appellate Panel's order addresses two different points in time—(1) Wofford's actions at his mother's home and (2) his actions when he was on his way to work.

## II.  Exception to Going and Coming Rule

Claimants argue the Appellate Panel erred in finding Wofford was acting outside the course and scope of his employment at the time of his death because his claim fell within an exception to the going and coming rule. Claimants assert that

once Wofford left his mother's home, he was in the process of executing a specific task for the City—retrieving a spare key from a recreational center. Thus, Claimants maintain Wofford was performing an act in connection with his duties as the superintendent of the Department. We disagree.

■ Generally, an employee going to or coming from the place where he works is not engaged in performing a service growing out of and incidental to his employment, and thus, an injury from an accident at such time does not arise out of and in the course of his employment. *Medlin v. Upstate Plaster Serv.*, 329 S.C. 92, 95, 495 S.E.2d 447, 449 (1998). However, South Carolina has recognized five exceptions to this rule. Among these are where (1) "the means of transportation is provided by the employer, or the time that is consumed is paid for or included in the wages;" (2) "the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment;" (3) the way to work is inherently dangerous and is either the exclusive way or is constructed and maintained by the employer; (4) the injury occurred in close proximity to the workplace and there is an express or implied requirement that the employee use that approach in going to and coming from work; and (5) an employee is injured "while performing a special task, service, mission, or errand for his employer, even before or after customary working hours, or on a day on which he does not ordinarily work." *Id.* at 95–96, 495 S.E.2d at 449.

■ Under the duty or task exception, "an employee will not be precluded from receiving benefits where the employee, on his way to or from his work, is charged with some duty or task in connection with his employment." *Whitworth v. Window World, Inc.*, 377 S.C. 637, 641, 661 S.E.2d 333, 336 (2008). In *Whitworth*, a window installer loaded his equipment onto his truck and proceeded to the jobsite to install windows. *Id.* at 639, 661 S.E.2d at 335. After stopping for a drink, the window installer was involved in an automobile accident. *Id.* The supreme court held the window installer failed to show he was charged with a work-related duty or task under the duty or task exception of the going and coming rule because the primary purpose of his trip was a personal objective—to travel to the place where he would perform his work. *Id.* at 641, 661 S.E.2d at 336. Further, the court noted he did not have any

work-related duties to perform on his way to work, he was not under the control of his employer, and he was free to conduct personal business. *Id.*

Additionally, the special task exception "allows compensation where an employee sustains an injury while performing a special task, service, mission, or errand for his employer, even before or after customary working hours, or on a day on which he does not ordinarily work." *Gray v. Club Grp., Ltd.*, 339 S.C. 173, 189, 528 S.E.2d 435, 443 (Ct.App. 2000). In *Bickley v. South Carolina Electric & Gas Co.*, the supreme court held an electrical lineman's death arose out of and in the scope of his employment because he was on a special errand or mission for his employer. 259 S.C. 463, 471, 192 S.E.2d 866, 870 (1972). There, a lineman was called to repair storm damage to electrical lines in Charleston. *Id.* at 467, 192 S.E.2d at 868. He left his home in Columbia at 3:30 a.m. *Id.* The lineman and his crew worked until 11:30 p.m. and decided to return to Columbia. *Id.* at 467–68, 192 S.E.2d at 868. After arriving in Columbia and leaving work at 3:30 a.m. the following morning, the lineman drove home and crashed into a truck. *Id.* at 468, 192 S.E.2d at 868. The collision killed the lineman. *Id.* The court explained the lineman was entitled to compensation from the time he left his home until his return because he was obligated to make emergency calls or perform services at times other than his regular working hours and he was on a special errand or mission for the employer. *Id.* at 470, 192 S.E.2d at 870.

In *McDaniel v. Bus Terminal Restaurant Management Corp.*, the supreme court held a cook who was injured in an automobile accident on the way home from an employee meeting did not suffer a compensable injury under the "special errand exception." 271 S.C. 299, 301–03, 247 S.E.2d 321, 322–23 (1978). The court concluded that unlike the lineman in *Bickley*, the cook was not called to perform an emergency service and the employee meetings were not unusual or "special." *Id.* The court found the cook's attendance at the employee meetings was a normal, customary aspect of her job and she did not perform a special errand by attending the meeting. *Id.* Further, the court noted she had not performed any service to her employer while enroute to or from her place of employment and the trip was not a substantial part of the service for which she was employed. *Id.*

We find substantial evidence supports the Appellate Panel's finding that Wofford's accident did not meet an exception to the going and coming rule. *See Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135–36, 276 S.E.2d 304, 306–07 (1981) (providing this court must affirm the findings of fact made by the Appellate Panel if they are supported by substantial evidence). Although we agree with the City that Claimants have not specifically indicated which exception was met, the Claimants generally argue Wofford's death arose out of and in the course of his employment because he met either the duty or task exception or the special errand exception. For example, Claimants argue Wofford was "in the process of executing a specific task given [to] him by Tracy Ballew" and the "task was one of value to the employer." Additionally, Claimants assert Wofford was "embarking on [an] errand" to retrieve the spare key for Ballew and he had "no discretion" to stop on his way to work. The Appellate Panel also ruled on these two exceptions. Accordingly, we analyze Claimants' arguments under these two exceptions.

First, we agree with the Appellate Panel's finding that the duty or task exception did not apply. Similar to *Whitworth*, the primary purpose of Wofford's trip was a personal objective to travel to the recreational center where he performed his work. *See* 377 S.C. at 641, 661 S.E.2d at 336 (holding a window installer did not meet an exception to the going and coming rule when he was involved in an accident transporting a piece of equipment to a job site). We note retrieving the key was Wofford's first task of the day and three employees, including Wofford's immediate supervisor, testified it was common for Wofford to work out of his office, the various recreational centers, and the swim center. Kennedy, Wofford's supervisor, also testified retrieving a key and signing forms for Ballew were within Wofford's typical job responsibilities. Thus, Kennedy and the other employees' testimonies support the Appellate Panel's finding Wofford was "merely on his way to work to engage in his typical job responsibilities," which included retrieving a key and signing forms for Ballew, and he was not charged with any work-related duties at the time of the accident. *See Medlin*, 329 S.C. at 95, 495 S.E.2d at 449 (stating an employee going to or coming from the place where he works is not engaged in

performing a service growing out of and incidental to his employment, and thus, an injury from an accident at such time does not arise out of and in the course of his employment).

Second, we agree with the Appellate Panel's finding the special errand exception did not apply. Similar to *McDaniel*, Wofford was on his way to work to perform his typical job duties like retrieving keys and signing forms, and thus, he did not perform a special errand by driving to the swim center. *Compare McDaniel*, 271 S.C. at 303, 247 S.E.2d at 323 (providing a cook did not suffer a compensable injury under the special errand exception when injured in an automobile accident on her way home from an employee meeting because the meeting was a normal, customary aspect of her job and she did not perform a special errand by attending the meeting), *with Bickley*, 259 S.C. at 470, 192 S.E.2d at 870 (holding a lineman was entitled to compensation because he was obligated to make emergency calls or perform services at times other than his regular working hours and he went on a special errand for the employer).

## CONCLUSION

Based on the foregoing, we affirm the Appellate Panel's finding Wofford was not acting within the course and scope of his employment at the time of his death.

**AFFIRMED.**

FEW, C.J., and KONDUROS, J., concur.