806 S.E.2d 731

Dallas Paul BESSINGER, Claimant,

v.

R-N-M BUILDERS & ASSOCIATES, LLC, Employer, and
FirstComp, a division of Markel, Inc., Carrier,

Of whom the South Carolina Uninsured Employers'
Fund is the Appellant/Respondent,

And FirstComp, a division of Markel, Inc.,
is the Respondent/Appellant.

Appellate Case No. 2015-002092
Opinion No. 5521

Court of Appeals of South Carolina.

Heard February 7, 2017
Filed October 25, 2017

350

Amy V. Cofield, of Cofield Law Firm, of Lexington, for Appellant/Respondent.

Richard Daniel Addison and Lee E. Dixon, both of Hedrick Gardner Kincheloe & Garofalo, LLP, of Columbia, for Respondent/Appellant.

THOMAS, J.:

This is a cross-appeal from a final decision and order of the Appellate Panel of the Workers' Compensation Commission holding the South Carolina Uninsured Employers' Fund (UEF) responsible for Dallas Bessinger's benefits. The Appellate Panel found the workers' compensation policy between J&L Construction, LLC (J&L) and FirstComp, a division of Markel, Inc., (FirstComp) was procured by fraud and void ab initio. This case involves an unusual procedural posture where a Single Commissioner found the policy void ab initio, the Appellate Panel vacated the decision of the Single Commissioner and remanded for a "hearing de novo," a Single Commissioner once again found the policy void ab initio, and the Appellate Panel affirmed that finding in full. UEF argues (1) the Single Commissioner erred by reconsidering evidence submitted in the first hearing without ensuring a proper foundation was laid in the second hearing; (2) the Single Commissioner erred in denying UEF's motion to exclude several depositions during the second hearing; and (3) the Appellate Panel erred in finding a workers' compensation policy can be void ab initio when statute requires a party to cancel a workers' compensation policy in accordance with the statutory framework. FirstComp appeals the Appellate Panel's initial remand arguing it exceeded and failed to comply with its statutory and regulatory authority. We affirm.

**FACTS**

Dallas Bessinger was employed by J&L, which was operated by Emory Wilkie and John Loughery, to perform certain roofing work. On January 4, 2012, Bessinger fell from a roof sustaining injuries to his left hip, right arm, ribs, and back. Bessinger immediately went to the hospital. While Bessinger was at the hospital, Wilkie and Loughery proceeded to Midlands Insurance Center in Lexington to meet with a workers' compensation representative, TaLisa Miller. Wilkie represented to Miller that J&L had no knowledge of a prior injury or pending litigation resulting from its work. Miller then accepted a cash payment of the premium and issued a policy from

FirstComp backdated to 12:01 a.m. on January 4, 2012. Bessinger attempted to file a workers' compensation claim with Miller the following Monday, and Miller immediately informed FirstComp of the potential fraud. FirstComp then informed J&L, Wilkie, and Loughery it was rescinding the policy due to fraud. Bessinger filed his Form 50 on April 19, 2012, alleging injuries to his left hip, right arm, ribs, and back. FirstComp and UEF each denied coverage.

The parties appeared before the Single Commissioner on July 18, 2012 (First Hearing), and the Single Commissioner adopted the Commission's file as part of the record after none of the participating parties objected. Bessinger testified he was working on a house in Orangeburg on January 4, 2012. Bessinger claimed he was rolling felt on the roof when "the felt came from under [him]" and he fell approximately three stories.

Following Bessinger's testimony, the Single Commissioner asked FirstComp if they had any witnesses to present other than the depositions submitted. FirstComp stated they had no other evidence to put forth. UEF did not object to the admission of the depositions.

The Single Commissioner filed a decision and order on December 18, 2012, finding that due to Wilkie and Loughery's fraudulent activity the policy was void ab initio. With respect to UEF's argument the issue was controlled by section 38-75-730,[1] the Single Commissioner found it did not alter the right of a party to rescind a contract induced by fraud. Therefore, the Single Commissioner held that the policy between FirstComp and J&L was void and UEF was liable for benefits under the Workers' Compensation Act (the Act).

UEF appealed the order to the Appellate Panel and again raised the argument that section 38-75-730 contemplates this factual situation. UEF claimed the Single Commissioner erred in finding the policy was void ab initio due to fraud. In response, FirstComp argued there is a difference between cancellation of a policy, which section 38-75-730 contemplates, and rescission of a policy.

---

1. S.C. Code Ann. § 38-75-730 (2015).

The Appellate Panel issued its decision and order (Remand Order) on April 17, 2014, vacating the Single Commissioner's decision and finding "good grounds have been shown for the Commission to reconsider the evidence, receive further evidence, and rehear the parties or their representatives pursuant to [section 42-17-50 of the South Carolina Code (2015).]" The Appellate Panel ordered the Single Commissioner to hold a "hearing de novo." The Appellate Panel did not give any further reasoning.

The Single Commissioner held the hearing de novo (Second Hearing) on August 21, 2014. FirstComp questioned the propriety of the Remand Order because the Appellate Panel did not give any specific instructions or reasoning in the order. UEF argued there is nothing in workers' compensation law allowing a policy to be void ab initio and section 38-75-730 is the only controlling law. UEF then contended the Remand Order wiped the slate totally clean regarding evidence submitted during the First Order. UEF argued there were issues regarding notice for the depositions and they were inadmissible during the Second Hearing. UEF claimed anything the Single Commissioner considered during the First Hearing was improper to consider during the Second Hearing absent independent foundation laid for the readmission of the evidence.

The Single Commissioner issued its decision and order on March 31, 2015. In the order, the Single Commissioner noted the Appellate Panel remanded the case with instruction to reconsider the evidence, receive further evidence, and rehear the parties or their representatives. The Single Commissioner found the Appellate Panel did not invalidate or exclude any evidence which was part of the record. Therefore, the Single Commissioner stated the Second Hearing was based on the evidence presented during the First Hearing and any new evidence the parties wished to offer. The Single Commissioner then found all of the elements for fraud were met and the policy was procured by fraud and void ab initio. Additionally, the Single Commissioner held section 38-75-730 contemplated cancellation of an insurance policy while the present case concerned rescission due to fraud. Finally, the Single Commissioner dismissed FirstComp from the case and ordered UEF to provide benefits to Bessinger.

Following the Single Commissioner's decision and order, UEF again appealed to the Appellate Panel, and FirstComp filed a cross-appeal. UEF argued the Single Commissioner erred by considering evidence the parties submitted during the First Hearing without a proper foundation during the Second Hearing. UEF argued the depositions were inadmissible during the Second Hearing because notice was deficient. UEF reiterated its contention that a workers' compensation policy cannot be void ab initio and section 38-75-730 should control this case.

FirstComp argued this case revolved around the difference between rescission of a policy and cancellation of a policy. FirstComp argued the policy was procured by fraud and it was entitled to rescind the policy rather than cancel the policy pursuant to section 38-75-730. FirstComp argued the Single Commissioner correctly followed the instructions of the Appellate Panel by reconsidering evidence that had already been submitted. However, FirstComp argued the Remand Order was improper because the Appellate Panel did not state any supporting facts or law.

The Appellate Panel filed its decision and order on September 5, 2015, and adopted the findings, conclusions, and orders of the Single Commissioner verbatim. Therefore, the Appellate Panel found the policy void ab initio, dismissed FirstComp from the case, and ordered UEF to provide Bessinger benefits under the Act. This cross-appeal followed.

## UEF'S ISSUES ON APPEAL

1. Whether the Single Commissioner erred during the Second Hearing by considering evidence submitted during the First Hearing when FirstComp failed to lay a proper foundation for the evidence?

2. Whether the Single Commissioner erred in denying UEF's motion to exclude multiple inadmissible depositions?

3. Whether the Appellate Panel erred in finding a workers' compensation policy can be "void ab initio" or "rescinded" when South Carolina law requires a party to cancel such a policy pursuant to statute?

## FIRSTCOMP'S ISSUE ON APPEAL

> 1. Whether the Appellate Panel erred in vacating the first order of the Single Commissioner and remanding for the Second Hearing?

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act[2] governs the standard of judicial review in workers' compensation cases. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). When reviewing an appeal from the Appellate Panel, "this [c]ourt may not substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Corbin v. Kohler Co.*, 351 S.C. 613, 617, 571 S.E.2d 92, 95 (Ct. App. 2002). "Statutory interpretation is a question of law." *Hopper v. Terry Hunt Constr.*, 373 S.C. 475, 479, 646 S.E.2d 162, 165 (Ct. App. 2007). "This court is free to decide matters of law with no particular deference to the fact finder." *Murphy v. Owens Corning*, 393 S.C. 77, 82, 710 S.E.2d 454, 456 (Ct. App. 2011). "But whether the facts of a case were correctly applied to a statute is a question of fact, subject to the substantial evidence standard." *Hopper*, 373 S.C. at 479–80, 646 S.E.2d at 165. "When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 191, 684 S.E.2d 541, 543 (2009).

## UEF'S APPEAL

### 1. Consideration of Evidence From the First Hearing

UEF contends the Remand Order required the Single Commissioner to conduct the Second Hearing as if the First Hearing never happened. UEF argues the Single Commissioner erred during the Second Hearing by considering evidence from the First Hearing. We disagree.

We find UEF misconstrues the nature of the Remand Order by focusing too narrowly on the phrase "hearing de novo." Although the Appellate Panel did remand for a hearing de

---

**2.** S.C. Code Ann. §§ 1-23-310 through -400 (2005 & Supp. 2017).

novo, a complete reading of the Remand Order shows the purpose of the Second Hearing was to "reconsider the evidence, receive further evidence, and rehear the parties or their representatives." The instruction to "reconsider the evidence" demonstrates the Appellate Panel intended for the Single Commissioner to reconsider any evidence submitted during the First Hearing. Furthermore, this result is contemplated by the various attendant statutes and regulations. Section 42-17-50 of the South Carolina Code (2015) permits reconsideration of evidence, receipt of additional evidence, and the rehearing of parties or their representatives. Also, Regulation 67-707[3] allows a Single Commissioner to take additional evidence. Therefore, we find the Single Commissioner did not err during the Second Hearing by considering evidence submitted during the First Hearing.

### 2. Admissibility of Depositions

■ UEF argues the Single Commissioner wrongfully admitted several depositions during the Second Hearing. UEF asserts the deposition of TaLisa Miller was wrongfully admitted because there was no evidence it received proper notice of the deposition. UEF argues the depositions of John Loughery and Emory Wilkie were inadmissible because UEF did not receive notice of the depositions and was not present when they were conducted. UEF claims it is irrelevant whether the evidence was admissible in the First Hearing. We disagree.

UEF did not object to the admission of the depositions during the First Hearing or during its first appeal to the Appellate Panel. Indeed, UEF raised no argument regarding admission of the depositions until the Second Hearing. Because, as discussed above, the Appellate Panel ordered the Single Commissioner to reconsider the evidence from the First Hearing and UEF failed to object to the depositions during the First Hearing, UEF waived any ability to object during the Second Hearing. Thus, the Single Commissioner properly considered the depositions during the Second Hearing.

---

3. S.C. Code Ann. Regs. 67-707 (2012).

### 3. Section 38-75-730

UEF asserts a workers' compensation policy must be cancelled according to section 38-75-730 for the cancellation to be effective and can never be void ab initio. UEF argues section 38-75-730 contemplates the factual posture of the instant case and is the only method for cancelling the policy. UEF argues Bessinger cannot be denied benefits due to the fraudulent actions of employers. Because Bessinger is a third-party beneficiary of the contract, UEF asserts fraudulent actions by the employers cannot defeat his entitlement to benefits under the policy. UEF argues the language of the policy must be construed against the issuer and the policy does not allow for the type of relief sought by FirstComp. UEF also claims any fraudulent conduct by Bessinger's employers cannot void the policy because FirstComp was negligent when it issued the policy. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute." *Id.* "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* "The goal of statutory construction is to harmonize conflicting statutes whenever possible and to prevent an interpretation that would lead to a result that is plainly absurd." *Id.* at 91, 533 S.E.2d at 584. "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." *Miller Constr. Co. v. PC Constr. of Greenwood, Inc.*, 418 S.C. 186, 204, 791 S.E.2d 321, 331 (Ct. App. 2016) (quoting *State v. Elwell*, 403 S.C. 606, 612, 743 S.E.2d 802, 806 (2013)).

In pertinent part, section 38-75-730(a)(2) reads "[n]o insurance policy or renewal thereof may be canceled by the insurer prior to the expiration of the term stated in the policy, except for ... [a] material misrepresentation of fact which, if known to the company, would have caused the company not to issue the policy[.]"

Our supreme court has recognized the difference between rescission and cancellation of a contract. *See Gov't Emp. Ins. Co. v. Chavis*, 254 S.C. 507, 516, 176 S.E.2d 131, 135 (1970) ("[C]ancellation refers to the termination of the policy prior to the end of the policy period, and termination refers to the expiration of policy by the lapse of the policy period. Rescission is not merely a termination of contractual obligation but is abrogation or undoing of it from the beginning, which seeks to create a situation the same as if no contract ever had existed."). In *Scott v. Mid Carolina Homes, Inc.*, this Court stated:

> A contract may be rescinded for unilateral mistake only when the mistake has been induced by fraud, deceit, misrepresentation, concealment, or imposition of the party opposed to the rescission, without negligence on the part of the party claiming rescission, or when the mistake is accompanied by very strong and extraordinary circumstances which would make it a great wrong to enforce the agreement.

293 S.C. 191, 199, 359 S.E.2d 291, 297 (Ct. App. 1987), *overruled on other grounds by Ward v. Dick Dyer & Assoc., Inc.*, 304 S.C. 152, 403 S.E.2d 310 (1991).

UEF points to the North Carolina case *Oxendine v. TWL, Inc.* and urges this court to follow the statement found therein that "a workers' compensation insurance contract will ... never be void ab initio, but must be cancelled in a manner prescribed by [the statute at issue]." 184 N.C.App. 162, 645 S.E.2d 864, 866 (2007). Although *Oxendine* provides guidance and our courts give weight to decisions of North Carolina courts interpreting that state's workers' compensation statutes, we find *Oxendine* distinguishable from this case. The policy at issue in *Oxendine* was in existence for several months before the injury. *Id.* at 865. Also, the insurance carrier attempted to cancel the policy for "underwriting reasons" prior to the date of the injury. *Id.* Following the injury, there was a dispute as to coverage and the North Carolina Workers' Compensation Commission ultimately held the carrier responsible for coverage. *Id.* On appeal, the carrier argued the employer made material misrepresentations, the content of which were not disclosed in the court's opinion, in the application for insurance which should prevent recovery under applicable law. *Id.* The North Carolina Court of Appeals

disagreed, finding a statute which specifically prohibited cancellation of certain workers' compensation policies controlled. *Id.* at 866. The court ultimately held a North Carolina workers' compensation policy can never be void ab initio but must be cancelled in the manner prescribed by the controlling statute. *Id.*

Although *Oxendine* provides guidance, we find *Star Insurance Company v. Neighbors*, 122 Nev. 773, 138 P.3d 507 (2006) more persuasive. As in this case, the policy at issue in *Neighbors* was not in existence at the time the injured employee fell off a roof. *Id.* at 509. The day after the incident, the employer requested the carrier reinstate its workers' compensation insurance, which had lapsed a few months prior. *Id.* The insurer required the payment of an unpaid premium and a letter from the employer verifying that no losses had occurred during the cancellation period. *Id.* The employer fraudulently stated there had been no loss, fully aware of the injury to the employee. *Id.* After the employee submitted a claim for workers' compensation benefits, the insurer denied the claim, returned the premium, and rescinded the policy based on the misrepresentation. *Id.* The issue in *Neighbors* was the interpretation of a statute similar to the one in *Oxendine* and the case at bar.[4] *Id.* In analyzing the statute, the court noted that while it afforded an insurer the right to void a policy based on misrepresentations, it also protected the employee by requiring the insurer "to provide compensation to claimants arising before the cancelation of the policy." *Id.* at 510. The court noted the apparent contradiction, stating the statute did "not clearly apply to retroactive insurance which, by definition, did not exist at the time of the injury." *Id.* The court reasoned:

> Certainly, an obligation to provide compensation under the statute is normally stimulated by an accident, the obligation normally arises under pre-existing coverage, and the term "cancellation" normally presumes the discontinuation of a

4. "No statement in an employer's application for a policy of industrial insurance voids the policy as between the insurer and employer unless the statement is false and would have materially affected the acceptance of the risk if known by the insurer, but in no case does the invalidation of a policy as between the insurer and employer affect the insurer's obligation to provide compensation to claimants arising before the cancellation of the policy." Nev. Rev. Stat. § 616B.033(2) (2012).

pre-existing policy. Further, an anomalous situation occurs where the employer fraudulently seeks to create the "obligation to provide compensation" after the fact. Thus, when the employer has fraudulently procured retroactive or backdated insurance for the explicit purpose of obtaining coverage for a pre-existing loss, a latent ambiguity arises in connection with the scope of [the statute].

*Id.* When examining the purpose of the statute, the court found, among other purposes, "the measure prohibits the practice of 'post-accident' underwriting, i.e., claim avoidance under a pre-existing policy, based upon an act of fraud that is totally unrelated to the subsequent claim or otherwise." *Id.* at 510–11. The court then stated:

This is not a case of post-accident underwriting with regard to an existing policy. . . . [Insurer] is not attempting to avoid coverage it had placed before an accident based upon misconduct that is in no way related to the claim in question. In this instance, [the employer] obtained the policy by fraud to get coverage for this particular claim.

*Id.* at 511. Following this conclusion, the *Neighbors* court cited other jurisdictions that reached similar conclusions. *See id.* ("If A applies for fire insurance upon a building and fraudulently represents that he has had no fire losses, the policy may be voidable and subject to cancellation by the insurer upon discovery that the insured had had losses under circumstances making the new risk undesirable. But if he applies for insurance knowing that the building has already been destroyed by fire, conceals the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches." (quoting *Matlock v. Hollis*, 153 Kan. 227, 109 P.2d 119, 124 (1941))). Following the reasoning in *Matlock*, the *Neighbors* court ultimately held that when "the 'obligation to provide compensation' under [the] statute is itself procured by post-accident fraud, [the statute] does not operate to retroactively impose coverage." 138 P.3d at 512.

This rationale has been followed by other jurisdictions. *See Century Indem. Co. v. Jameson*, 333 Mass. 503, 131 N.E.2d 767 (1956); *Hunt v. Aetna Cas. & Sur. Co.*, 153 Colo. 584, 387 P.2d 405 (1963); *Maise v. Delaney*, 81 S.D. 306, 134 N.W.2d 770 (1965). Indeed, *Larson's Workers' Compensation Law* recognizes this general principle stating:

The only situation in which the insurance would be defeated for all purposes by act of the employer is that in which the insurance is absolutely void ab initio, rather than voidable; this would occur if the employer attempted to insure against an accident that had already occurred, by pre-dating the insurance and fraudulently concealing the known existence of an accident within the period so covered.

14 Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law*, § 150.02[4] (2016).

Based on standard statutory construction principles, we find section 38-75-730 does not restrict a party's ability to rescind an insurance contract under the circumstances of this case. Our case law has long recognized the distinction between rescission and cancellation of a contract. *See Boddie Noell Props., Inc. v. 42 Magnolia P'ship*, 352 S.C. 437, 442–44, 574 S.E.2d 726, 728–29 (2002) (recognizing the distinction between rescission and cancellation of a contract); *First Equity Inv. Corp. v. United Serv. Corp. of Anderson*, 299 S.C. 491, 498, 386 S.E.2d 245, 249 (1989) (affirming the distinction between rescission and cancellation of a contract by explaining a party cannot simultaneously seek rescission damages and other remedies that essentially affirm the existence of a contract); *Chavis*, 254 S.C. at 516, 176 S.E.2d at 135 ("[C]ancellation refers to the termination of the policy prior to the end of the policy period, and termination refers to the expiration of policy by the lapse of the policy period. Rescission is not merely a termination of contractual obligation but is abrogation or undoing of it from the beginning, which seeks to create a situation the same as if no contract ever had existed."). Despite this distinction, our legislature used only the term "cancellation" and "canceled" in section 38-75-730. If the legislature wanted to proscribe the circumstances under which a party to an insurance contract could rescind such a contract, it could have done so. However, because the legislature did not include the term "rescission" in any part of section 38-75-730, we find our common law precedents regarding rescission of a contract remain. *See Smith v. Tiffany*, 419 S.C. 548, 556, 799 S.E.2d 479, 483 (2017) (explaining the legislature's use of "differing terms" is deliberate and the words mean what they say). Thus, by its plain language, section 38-75-730 applies when a party wishes to cancel a policy already in existence at

the time of a loss and not when a party seeks to rescind a policy procured by fraud to cover a pre-existing loss.

Insurance by its very nature is meant to protect against the unknown or the possibility of a loss. An insurance company issues a policy and assumes such a risk or possibility of loss. That was indeed what happened in *Oxendine*. However, in *Neighbors* and this case, the insurance company was not assuming any risk or possibility of loss. Instead, the employer attempted to gain coverage for a known loss that had already occurred. Contrary to UEF''s assertions, we find section 38-75-730 does not contemplate such a scenario. Section 38-75-730 does not apply under the limited circumstances of this case, and the Appellate Panel properly found it did not bar FirstComp from rescinding the policy.

Finally, with regard to UEF''s claims that FirstComp was negligent and, thus, could not prevail on a rescission claim, UEF offered no evidence other than unsupported assertions to show FirstComp's actions were negligent or in any way outside the realm of normal business practices. Thus, UEF failed to show the Appellate Panel's findings on this issue are unsupported by substantial evidence. Accordingly, we affirm the decision and order of the Appellate Panel finding a party may seek rescission of a workers' compensation policy when it was procured by fraud to cover a pre-existing loss.

## FIRSTCOMP'S APPEAL

FirstComp argues the Appellate Panel erred by vacating the initial order of the Single Commissioner because the Remand Order was facially invalid and did not comply with the requirements of the Act and other applicable law. Because the Remand Order was not a final judgment, FirstComp was required to continue in the litigation and could appeal only after final judgment. The ultimate result reached by the Appellate Panel was beneficial to FirstComp and identical to the position the parties were in prior to the remand. Because we affirm the Appellate Panel's final decision and order on the merits, the propriety of the Remand Order is merely academic. Therefore, FirstComp's appeal is moot. *See Mathis v. S.C. State Highway Dep't*, 260 S.C. 344, 346, 195 S.E.2d 713, 715 (1973) ("A case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy.

This is true when some event occurs making it impossible for [a] reviewing [c]ourt to grant effectual relief.").

## CONCLUSION

For the foregoing reasons, we affirm the final decision and order of the Appellate Panel of the Workers' Compensation Commission.

**AFFIRMED.**

LOCKEMY, C.J., and HUFF, J., concur.